Great Atlantic & Pacific Tea Company, Appellant, vs. Industrial Commission of Wisconsin and another, Respondents.

*April 6—May 12, 1931.*

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Hattle there was a brief by *Hill & Miller* of Baraboo, and oral argument by *James H. Hill.*

FRITZ, J. The facts as stated above are not in dispute. Plaintiff takes exception to the award because the Industrial Commission found and concluded that Arndt was a contractor under the plaintiff; that the service which Hattle was performing when injured and which grew out of and was incidental to his employment by Arndt was performed in pursuance of the contract between the plaintiff and Arndt; and that therefore plaintiff, as an employer subject to the compensation act, was liable by reason of the provisions of sec. 102.06, Stats., for compensation for the injuries which Hattle sustained, as an employee of a contractor who was not subject to the compensation act, while performing services as to which plaintiff would have been liable for compensation to Hattle if he had been working directly for plaintiff. Plaintiff contends and assigns as error that Arndt was not a contractor within the contemplation of sec. 102.06, because he was a common carrier, or his relationship to the plaintiff was analogous to that of a common carrier; and also that the provisions of sec. 102.06 are unconstitutional.

Sec. 102.06, so far as now material, provides:

"An employer subject to the provisions of sections 102.03 to 102.34 shall be liable for compensation to an employee of a contractor or subcontractor under him who is not subject to sections 102.03 to 102.34, or who has not complied with the conditions of subsection (2) of section 102.28 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer."

Although no formal written contract was ever entered into between plaintiff and Arndt, the latter, with the knowledge of plaintiff, and for its exclusive use and benefit, regularly made two trips per week for two and one-half years, trucking all of the butter which it purchased at Baraboo;

and plaintiff paid Arndt for that service at a fixed rate. While the butter was in transit and Arndt's truck was in use solely for the plaintiff, there certainly existed a contractual relationship between Arndt and the plaintiff, regardless of whether the contract was express or implied. By reason of that contractual relationship with plaintiff, Arndt, when actually performing services exclusively for plaintiff, was either an independent contractor, or an employee of plaintiff for hire. If his relationship to plaintiff was that of an employee under a contract of hire, express or implied, and Arndt in that capacity employed Hattle nineteen days to help or assist him, so that plaintiff had actual or constructive knowledge of Hattle's employment, then, by virtue of sec. 102.07 (4), Stats., Hattle, as a helper or assistant of Arndt, is considered, as a matter of law, an employee of plaintiff within the protection of the compensation act; and that would be sufficient to sustain the award.

On the other hand, if Arndt was an independent contractor, it does not follow that he was a common carrier because he transported freight for hire, and that as a common carrier he and Hattle, as his employee or assistant, were excepted from the compensation act because of sec. 102.08 (4), relating to common carriers and their employees. Arndt was merely a private carrier, who performed only such transportation services as he was willing to perform for such shippers, and for such compensation, and at such times, and between such termini as were from time to time expressly or impliedly understood or agreed upon between the parties interested. Really, the only respect in which his activities were similar to those of a common carrier was that he transported freight for compensation. He did not operate between fixed termini or over a regular route, or upon any schedule. The nearest approach to regularity in his service was that he averaged two hauls per week for

the plaintiff, and that plaintiff continued to compensate him at the same rate, although neither was under any obligation to continue either the service or the rate of compensation. He had no established uniform rates or tariff basis. He had not offered to accept, indiscriminately, all freight tendered for transportation; and he was not obliged to serve all shippers: He could serve or decline to serve, as he saw fit, and he could charge as he agreed with those whom he elected to serve. None of those distinctive characteristics of a common carrier (*Independent Tug Line v. Lake Superior L. & B. Co.* 146 Wis. 121, 127, 131 N. W. 408; *Waldum v. Lake Superior T. & T. R. Co.* 169 Wis. 137, 170 N. W. 729) existed in relation to Arndt's operations. On the contrary, his services were of such private character that they did not even render him subject to the control which the railroad commission is authorized, by sec. 194.01 (6), to exercise over public automobile transportation when it is similar to that afforded by common carriers, such as street or interurban railways.

It is probably true, as plaintiff contends, that sec. 102.06 was not intended to make an employer liable to the injured employees of every one with whom the employer had some sort of contractual relations. Thus, in *Deep Rock Oil Co. v. Derouin,* 194 Wis. 369, 216 N. W. 505, it was held that an employer who was also a lessor was not liable for compensation to an employee of his lessee, although by virtue of the lease contractual relations necessarily existed between the employer and the lessee, and some additional obligations were even created by the lease, which were foreign to the usual scope of a lease. However, none of the contractual obligations thus created by the lease required the lessee to perform any work for the lessor which was of such nature that the lessor would have been liable for compensation to an injured employee if such employee had been working directly

for such lessor. In that respect the *Deep Rock Oil Company Case* is distinguishable from the case at bar, and that distinction is of crucial significance because, by reason of the express terms of sec. 102.06, the employer's liability for compensation to an injured employee of an independent contractor arises only when "such employer would have been liable for compensation if such employee had been working directly for such employer."

As the work which Hattle was doing in performance of Arndt's contractual relationship with plaintiff was such that plaintiff would have been liable for the compensation for Hattle's injuries if he had been working directly for plaintiff, sec. 102.06 is applicable, and plaintiff is liable for the compensation.

Appellant contends that sec. 102.06 is an unconstitutional invasion of property rights and liberty, in violation of the Fourteenth amendment to the federal constitution, because it extends the operation of the compensation act to relations wholly foreign to its original purpose, and does not merely substitute a new liability for an existing liability. The contention is based primarily upon counsel's assertion that the constitutionality of the compensation act "was upheld in *Borgnis v. Falk Co.* 147 Wis. 327, 133 N. W. 209, and subsequent cases, principally on the ground that it imposed upon the industry the industrial cost of its maintenance and that compensation to injured employees was a legitimate part of the expense of the industry. If this section is held to include such a relationship as existed between the Tea Company and Arndt, it is wholly outside the scope for which the act was held constitutional."

The assertion, in turn, is based rather upon the discussion in the concurring opinion of Mr. Justice MARSHALL in *Borgnis v. Falk Co., supra,* p. 370, than upon the basic reason for sustaining the law as stated in the opinion of the

court as written by Mr. Chief Justice WINSLOW, viz. that the act is not a compulsory law, but leaves to every employer and employee a free choice as to whether he will accept its terms or not. *Borgnis v. Falk Co., supra,* p. 350. As to that basic reason for sustaining the act, this court said in *Booth Fisheries Co. v. Industrial Comm.* 185 Wis. 127, 132, 200 N. W. 775:

"Over a period of thirteen years, during which time every employer of consequence has accepted the provisions of the law, acted under it, and paid the compensation for injuries provided by it, this disposition by the court of the question here presented has apparently met with universal acquiescence. . . . So that in so far as the workmen's compensation act has a mandatory effect, its constitutionality has been affirmed by this court. It deprives no one of any rights protected by the constitution, nor does it affect them in any manner whatever unless they elect to accept its provisions, and having elected to accept its provisions they are finally estopped from challenging its constitutionality upon both reason and authority. It does not take property without due process of law. It takes property only by acquiescence and consent of the individual, as in the absence of the acceptance by the individual of the provisions of the law it affects him not at all."

And upon a review of this court's decision in the *Booth Fisheries Company Case,* Mr. Chief Justice TAFT said, in relation to the claim that the act violated the Fourteenth amendment, "A complete answer to this claim is found in the elective or voluntary character of the Wisconsin compensation act" (271 U. S. 208, 210, 46 Sup. Ct. 491, 492).

Prior to the time of Hattle's injury, plaintiff had voluntarily become subject to the provisions of the compensation act, including sec. 102.06, Stats. It never filed with the Industrial Commission a written notice withdrawing its election to be subject to the act, as was authorized by sec. 102.05. Consequently, in the absence of such withdrawal notice,

plaintiff is deemed, as a matter of law, to have voluntarily accepted and remained subject to the provisions of the act. It must take them as enacted by the legislature, and cannot successfully challenge any part of the law. *Booth Fisheries Co. v. Industrial Comm., supra,* p. 134.

Furthermore, holding plaintiff liable for compensation for Hattle's injury merely imposes upon plaintiff the industrial cost of maintaining its business, and does not necessarily extend the protection afforded by the compensation act beyond the scope for which appellant contends the act was held constitutional.

The transportation of butter, which plaintiff had purchased at Baraboo, to its Milwaukee warehouse, was necessary in the ordinary and usual course of its regular business, and it would have been liable for compensation to one of its immediate employees if he had been injured while trucking the butter. In that event such compensation clearly would have been a legitimate expenditure in the conduct of its business, and an item of expense which it was one of the principal purposes of the act to impose upon the industry, instead of allowing the loss because of such an industrial injury to fall solely upon the injured employee. If Arndt had been subject to the compensation act and carried compensation insurance, Hattle would have had the protection contemplated by the act, and there would be no occasion for imposing the expense of the compensation upon plaintiff, for whom the service was being rendered, in order to avoid the injustice of allowing the loss, because of such an industrial injury, to fall solely upon Hattle's dependents. As Arndt was not within the act or covered by insurance, and the service which Hattle was performing was for plaintiff's benefit and was of such nature that plaintiff would have been liable for compensation if Hattle had been working directly for plaintiff, it is still wholly within the scope and legitimate purposes of the act to impose the compensation burden on

plaintiff as the proprietor of an industry upon which the legislature has seen fit to impose the burden of the loss because of such an industrial injury.

Thus construed, sec. 102.06 "conserves to the employee the indemnity intended to be given him by the legislature by making contractors liable for injuries received by employees of a subcontractor who is not under the act. They will be careful to protect themselves and will also see to it that their subcontractors are protected against such losses." *Miller v. Industrial Comm.* 179 Wis. 192, 190 N. W. 81. See, also, *Cermak v. Milwaukee Air Power Pump Co.* 192 Wis. 44, 50, 211 N. W. 354.

*By the Court.*—Judgment affirmed.

ROSENBERRY, C. J. (*dissenting*). In my opinion Arndt was not a contractor within the meaning of sec. 102.06, Stats., the material part of which is set out in the opinion of the court. Arndt was employed from time to time as occasion arose to perform the services described in the opinion of the court. He was under no contract which required him to respond each time he was summoned. In my opinion it is not within the purview of the statute that a person employing a baggage truckman to haul baggage, or a private truckman to deliver goods, thereby subjects himself to liability for injuries which may be sustained by the employees of the baggageman or truckman, in the course of their employment. This it seems to me necessarily results from the holding in this case if the employer is already under the compensation act.