EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*March 11—April 7, 1937.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Jefferson Burrus* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FAIRCHILD, J. The facts, which are undisputed, are that Thomison was an employee of E. L. Peterson. Peterson was engaged in business on his sole account. He entered into an agreement with the Gagen Lumber Company to sell logs to it. The Lumber Company had formerly done its own logging, but had closed up that department of the business some time before the transactions involved in this case occurred. Peterson was a farmer from whom the Lumber Company had, after it stopped logging on its own account and at different times, bought logs. The Lumber Company lent Peterson money with which he purchased a tract of land and certain equipment; as he delivered logs to the company, his debts were accordingly charged off. The price of the logs was the market price. Peterson sold some logs to others. He owned his own trucks and all necessary logging equipment; he did, however, borrow some blankets and bunks from the Lumber

Company. The Lumber Company upon order from Peterson issued checks to Peterson's employees in payment of their wages, and these sums, with all others advanced to him, were charged to him. The evidence disclosed reasons based on convenience for the handling of the finances as they were handled, and this was without any intermingling of funds or yielding control by either to the other of their internal affairs.

There is no evidence of the Lumber Company entering into a contract with Peterson for his services in promotion of its ordinary and usual business such as would otherwise be performed directly through its own employees. The two operations or businesses were separate and distinct, and there are no facts on which to base the inference that Peterson was a "contractor under" the plaintiff so that it could be said the Lumber Company had any control "over more than simply the outcome of the work contracted for." The setup of the two businesses and the method of doing business indicate independence of each other in all the internal operations, and fixes the relation to each other as that of vendor and vendee. *Madison Entertainment Corp. v. Industrial Comm.* 211 Wis. 459, 248 N. W. 415; *School District v. Industrial Comm.* 216 Wis. 244, 257 N. W. 18. The commission, when the matter was before it, decided that inasmuch as the furnishing of logs by Peterson to plaintiff "was in effect conducting an essential part of its business," concluded "that at the time of injury Peterson was a contractor under Gagen Lumber Company within the meaning of sec. 102.06, and that both respondents [Insurance Company and Gagen Lumber Company] are liable for the payment of compensation benefits to the applicant. . . ." The trial court followed the same theory and adopted that result, but the facts do not warrant the conclusion that the relation of subcontractor or a contractor "under him [employer]" exists. A business concern must be accorded the right to trade and deal with others in the open

market, and ordinarily be free from liability to pay the debts and obligations of such others. Provisions of the type set forth in sec. 102.06, Stats., are to prevent employers from relieving themselves of liability by doing through so-called independent contractors, but not such in fact, what they would otherwise do through direct employees. *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 237 N. W. 117. It was not one of the legislative purposes to place undue burdens upon a business in dealing with others conducting entirely distinct enterprises. We have carefully examined the evidence and find, as both counsel suggest, that there is no dispute over what occurred. There is, therefore, presented the issue of law as to whether Peterson was a contractor under the Gagen Lumber Company. There being no evidence of any connection between the operation of the businesses which can be claimed to make them interdependent or to sustain a finding that the operator of one is a contractor under the operator of the other, it must be held that the commission did exceed its powers in making the award that is here for review. Peterson was not hired by the Gagen people to get out the logs. The agreement between them was one of sale and purchase. There was no respect in which Peterson's physical conduct in the performance of his business could be controlled by the Gagen Lumber Company; the risk of loss was upon Peterson, and the severalty of condition was not affected by the fact that Peterson borrowed money to enable him to engage in business to the extent he did. The general principles which control this case are discussed in the *Madison Entertainment Corp. Case, supra,* and *Wells Coal & Dock Co. v. Industrial Comm., post,* p. 546, 272 N. W. 480.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment setting aside the award of the Industrial Commission.