HEINEMAN LUMBER COMPANY and another, Appellants, vs.
INDUSTRIAL COMMISSION and another, Respondents.

*November 12—December 7, 1937.*

374

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Henry S. Reuss* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FAIRCHILD, J.    The Heineman Lumber Company owned land on which stood the timber supposed to have been contracted for by Russell.   The company desiring to sell the land, the proposed purchaser not being interested in the timber, made an arrangement under which Russell was to cut the trees into cordwood, sell the same, and pay to the Lumber Company $1 per cord.   The parties attempted to state the terms of the agreement in writing, but it appears the agreement was modified by the Lumber Company with the consent of Russell, and that several important changes with respect to details related to the management of the enterprise by Russell.   In addition, and bearing on the question of con-

trol over details, the original writing provided that Russell was to be the agent of the Lumber Company for the sale of the cordwood and the collection of the amounts due. In support of the commission's determination these facts become important, as they are capable of indicating that the Lumber Company, for the purpose of preparing its property for sale and in the management of its business so as to use the value of the timber on its land in the most practical way, engaged Russell to do its work for it and agreed to pay him all he could get over $1 per cord of one hundred twenty-eight cubic feet. As the work progressed, the exercise of control by the company did not extend to every detail, but the management of the affair in frequent and important instances was made to conform to orders or the expressed wishes of the Lumber Company, and this was to such an extent as to be beyond a purpose to see that the work was so executed as to bring about a certain ultimate result. The Lumber Company, meager as the evidence on the point is, is still sufficiently shown to be engaged in work such as it contracted with Russell to perform. It indicated trees to be cut and excluded others; it directed the operations of Russell. On December 2, 1935, it wrote Russell:

"Edgar is out of town and while this does not come within my direction, I just wanted to tell you that I was down on your job yesterday at Big Eddy and I don't like the way it is being done. I think the brush should be assembled and that the stumps should be cut lower, as there is a lot of wood left in them and it will look much better if this is done.

"I also note that you are not confining your cutting to any one place, but have been working in quite a number of spots, and I think you should make it a continuous operation from one end to the other rather than to make selections.

"Also noticed that there are not a sufficient number of trees being left, and I think that the occasional straight nice little elm, which is not good for wood, should be left, regardless of whether Mr. Kordick marked them or not.

"Will you please call me up and let me know that this will have your attention, and will you also arrange that settlement will be forthcoming promptly for the wood that you have removed thus far."

Again, on February 28, 1936, it wrote:

". . . You are to discontinue cutting any further wood and leave a strip on the west end and square it off by cutting not in excess of twenty-five cords more so that we will have a neat looking job and a screen for the refuse dump. You are also to leave the balance of the larger timber along the river and thereafter render us a complete report, including the logs, and collect and turn into us the funds as per our original contract. I understand that you will close up the fence and in the spring will personally take care of the disposal of the brush and tops, so that we will have a saleable piece of property. When you get to burning the brush down there, keep it away from the timber and do not start without a permit so that we will not have any difficulty with the fire wardens. . . ."

While the agreement provided for the sale of "all cordwood and merchantable timber" the company determined which trees were to be cut. Even though the written portion of the contract purported to sell all the timber on the tract, the company ordered Russell not to cut certain trees, and Russell felt bound to and did obey those instructions. Such conduct of the parties justified the commission in drawing the inference that the timber to be cut was within the discretion of the company.

It is also to be noted that in the original contract it was stipulated by the Lumber Company that Russell was to act "as our agent in our employ for the sale, delivery, and collection for all items delivered under this agreement. . . ." There was also a stipulation which in effect provided that the money, with the exception of portions which they permitted Russell to retain in payment of expenses, was to be turned

in to the Lumber Company, and the agreement provided on the part of the company:

"We agree to remit to you immediately any moneys in excess of $1 per cord of 128 cu. ft. remaining in our hands after completion of the work described above."

When the secretary of the Lumber Company was on the witness stand, he testified:

Question: "Now, in answer to Mr. Schmitt's question, the last question, you said 'under those circumstances he acted as your agent for collection, etc.' What do you mean by under those circumstances?"

Answer: "In order to avoid telling his customers that the wood wasn't his and that it would be an embarrassing situation to him—it could be, and we wanted to avoid that possible embarrassment to him."

This was followed by:

Question: "You say then the reason was to avoid telling the customers the wood wasn't his. Is that it?"

Answer: "Yes."

Determinations of questions of fact by the commission are conclusive when supported by any credible evidence. When a court reviews an order of the commission, its inquiry as to such determinations is solely: Is there any evidence to sustain them? When that question is answered in the affirmative, such determinations are accepted as verities. *Carey v. Industrial Comm.* 181 Wis. 253, 194 N. W. 339; *Scott & Howe L. Co. v. Industrial Comm.* 184 Wis. 276, 199 N. W. 159; *Chitlik v. Industrial Comm.* 225 Wis. 7, 272 N. W. 859. After questions of fact are so resolved, there remains the question whether the ultimate facts found support the conclusion of the commission concerning liability or nonliability; frequently the question is: Do the ultimate facts found fulfil a proper legal definition of such terms as employee, independent contractor, "contractor

under," and scope of employment? The answer of the commission to these questions is not conclusive on review. *Western W. & I. Bureau v. Industrial Comm.* 212 Wis. 641, 250 N. W. 834. In the present case, the commission has made a number of statements denominated findings of fact. The terminology, it is well settled, is not conclusive as to their character. *Seaman Body Corp. v. Industrial Comm.* 204 Wis. 157, 235 N. W. 433. Among the so-called findings of fact in the instant case are these:

"That the respondent, L. L. Russell, was a contractor under the respondent, Heineman Lumber Company . . . ; that under section 102.06 the respondent, Heineman Lumber Company, is liable for compensation for injuries suffered by employees of the said respondent, L. L. Russell."

The latter "finding" is a pure legal conclusion, and not a true finding of fact at all. The former "finding," that Russell was a contractor under the Lumber Company, is, under the circumstances of this case, a conclusion of law, since one of the questions it purports to settle is, abstractly, "What facts are required to produce the legal relationship of 'contractor under'?" as well as the question, "Do such facts exist in this case?" The commission specificly found:

"That the manner in which the work was carried out and the details thereof was to a large extent within the discretion of the Heineman Lumber Company."

The court is of the opinion that this, under the circumstances of this case, is a true finding of fact, and that it is sustained by the evidence. The court is also of the opinion that, while the commission did not specificly so find, the evidence would support findings that the cordwood remained the property of the Lumber Company; that the Lumber Company and Russell were not conducting distinct enterprises; that there was a connection between the business of the company and of the contractor; that the services were in promotion of the ordinary and usual business of the Lumber

Company, and were performed on behalf of the company by Russell. While the commission did not specificly make these findings, it is presumed that they were included within the so-called finding that Russell was a contractor under the Lumber Company, which they tend to support. The commission concluded that the foregoing facts combined to produce the relationship of "contractor under."

A commission finding, for example, "that A is the employee of B" may be a true finding of fact in one case and a mere conclusion of law in another. In *Chitlik v. Industrial Comm., supra,* there was no question of the definition of the employer-employee legal relationship. It was conceded in that case what the incidents of employee relationship would be if any such relationship existed; the dispute was whether those incidents, and therefore the relationship, did or did not exist. There the court held that the question was one of fact, and the commission's determination conclusive. In *Western W. & I. Bureau v. Industrial Comm., supra,* all the usual facts which are criteria of employment were known, such as the terms of employment, who paid the wages, who directed the employee's operations, whose work was being done, and so on. The question was what, in the abstract, constitutes employment under the compensation act? Similar questions have arisen in a number of cases dealing with borrowed employees and the like: *Cayll v. Waukesha G. & E. Co.* 172 Wis. 554, 179 N. W. 771; *Seaman Body Corp. v. Industrial Comm., supra.* The finding of the commission in the *Inspection Bureau Case* that the injured man was the employee of the bureau was held to be a conclusion of law and erroneous. In the instant case we hold that a so-called finding that Russell is a contractor under the Lumber Company is a conclusion of law, but is correct. The essential difference between the two cases is that in the *Inspection Bureau Case* it could not be said that the conclusion was correct on the basis of facts assumed to be found by the com-

mission, but not specificly found, because the undisputed evidence would not have permitted such findings. Here, however, the evidence would amply sustain the findings of facts which would properly lead to the conclusion that Russell is a contractor under the Lumber Company.

An employer may fairly be said to employ a contractor under him when his arrangement with the contractor is such that his control is present and effective enough to exclude the elements of independent contracting. Here the authority claimed by the company, exercised by it and recognized by the contractor to be in the company, brings the case into the category of cases like *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 470, 237 N. W. 117, where it was said:

"In such instances under the Workmen's Compensation Law the writings attempting to define the status of the parties and all the surrounding circumstances must be treated together in order to determine the exact relation which has resulted from the dealings between the parties. *Kneeland-McLurg L. Co. v. Industrial Comm.* 196 Wis. 402, 220 N. W. 199. The amount involved or the length of time required to complete the contract or render the service is not necessarily a determining factor."

One who carries on the business of another, working with a somewhat greater degree of independence than an employee, it is true, but the extent and details of whose work are largely in the discretion of the other, as here, is certainly a contractor under that other. We think that the commission properly concluded that Russell was a contractor under the Lumber Company.

*By the Court.*—Judgment affirmed.