15759

KENNERLY *ET AL.* v. OCMULGEE LUMBER COMPANY
*ET AL.*

(34 S. E. (2d), 792)

*Messrs. Thomas, Cain & Black,* of Columbia, S. C., and *Walker, Walker & Jenkins,* of Summerville, S. C., Counsel for Appellants,

*Messrs. J. D. Parler,* of St. George, S. C., and *J. Julien Bush,* of Barnwell, S. C., Counsel for Respondent,

July 25, 1945.

MR. CHIEF JUSTICE BAKER delivered the unanimous Opinion of the Court.

The facts of this case are within a narrow compass.

Ocmulgee Lumber Company, a corporation chartered under the laws of the State of Georgia, and duly domesticated under the laws of South Carolina, owns and operates a sawmill near Summerville, S. C. Its main timber holdings in Dorchester County are on a tract of land containing nearly four thousand acres, the fee to which is owned by said Company. This lumber company, in accord with its custom as to its logging operations, entered into a contract with one W. L. Helmey, Jr., an experienced logging contractor (and also with at least one other), to cut and haul to its mill at or near Summerville the timber from the large tract of land above mentioned, paying him therefor at the end of each week on the basis of a certain price per thousand feet based on the log measurements. This timber was cut under the general supervision of a representative of the lumber company, that is to say, a representative of the lumber company would from time to time visit the premises for the purpose of determining whether property lines were being properly observed, whether or not all the merchantable timber was being cleared up as the work progressed, and whether all the merchantable timber suitable for sawmill purposes was being cut in standard lengths so as to conserve all of the merchantable logs in the trees by cutting the logs and working them out most advantageously to conserve the footage on the acreage.

Helmey owned his own logging equipment, hired and paid his own employees who worked solely under his directions, and supervised and conducted the logging operations. He also built at his own expense the necessary roads into the timber, and on which to haul same out and to highways leading to the lumber mill, but the lumber company furnished him without charge the necessary lumber and timber with which to build and keep in repair these roads.

Prior to the accident out of which this action arose, Ocmulgee Lumber Company elected to come within the provisions of The South Carolina Workmen's Compensation Act, in respect of the operation of its sawmills, planing mills, lumber yard, clerical office employees, salesmen and collectors; and its co-appellant, American Mutual Liability Insurance Company, issued a policy of insurance covering the operation above set forth. Helmey has never elected to come within the said Workmen's Compensation Law. Code 1942, § 7035-1 *et seq.*

In October, 1943, one William Kennerly, Jr., an employee of the said Helmey, was killed while logging timber for Helmey from the tract of land hereinabove mentioned, and the beneficiaries entitled to recover under the said Compensation Law proceeded against the appellants, Ocmulgee Lumber Company and the American Mutual Liability Insurance Company, to recover under the provisions of the said Law for the death of the said Kennerly. The appellants deny liability on the grounds that the said Ocmulgee Lumber Company was not engaged in the logging operations in which the said Kennerly was engaged at the time of his death, and that it, the said Ocmulgee Lumber Company, had never elected to come within the provisions of the said Law in respect of logging operations.

The Hearing Commissioner found that said Kennerly received the fatal injuries while engaged in the performance of a part of the business of the Ocmulgee Lumber Company and that the said appellants were bound by, and subject to,

·the terms and provisions of the said Compensation Law. These findings were sustained by a majority of the Commission and by the Court of Common Pleas on appeal from the Opinion and Award of the majority of the Commission, and this appeal followed.

The only question to be determined in this appeal is whether the decedent, William Kennerly, Jr., who was employed by one W. L. Helmey, Jr., in these logging operations conducted by the said Helmey for the benefit of Ocmulgee Lumber Company, was brought within the provisions of the South Carolina Workmen's Compensation Law by reason of the election of the appellant, Ocmulgee Lumber Company, to accept the provisions of said Compensation Law as to its sawmill operations as hereinabove outlined.

The policy of insurance issued by American Mutual Liability Insurance Company to Ocmulgee Lumber Company, and filed with the Industrial Commission for the year, 1943 (also for the years, 1942 and 1944), covered the operations of the latter named Company as hereinabove indicated, and also contained the following provision:

"This agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident, or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with, or in relation to, such work places."

In addition thereto, the policy has the standard South Carolina endorsement stipulating that the obligations of the Insurance Company include the Workmen's Compensation Law of this State, the second paragraph of which is as follows:

"2. If this employer is an owner, contractor or subcontractor within the meaning of these words as used in Section 19 of said compensation law, and he shall subcontract

or otherwise provide for the performance of any of the work included in the employer's contract and covered by this insurance, the remuneration of all employees of every subcontractor of this employer shall be included in the return of remuneration of the direct employees of this employer and shall in all respects be governed by the same terms, conditions and requirements of the policy with respect to premium computation on such remuneration. The meaning of the word subcontractor as used herein shall be that stated in said Section 19. The requirements of this paragraph shall not apply with respect to the employees of any such subcontractor who furnishes this employer with evidence satisfactory to the Company that such subcontractor has complied with the provisions of said compensation law, during the continuance of such work, as respects insurance security as set forth in Section 67 of said Law."

Section 7035-16(b), Code of 1942, provides that the Workmen's Compensation Act shall not apply to "employees or employers principally engaged in the business of operating a sawmill, * * *, nor to logging operations and work incident thereto" unless such employees and employers voluntarily elect to be bound by the Act as provided in Section 7035-5(2) of the Code. The last-mentioned Section provides that any person exempted from the mandatory provisions of the Act "may come in under the terms of [the Act] and receive the benefits hereof and be subject to liabilities hereof. * * *"; and as aforestated, the Ocmulgee Lumber Company elected to come under the terms of the Act in respect to the operation of its sawmills, planing mills, lumber yard, clerical office employees, salesmen and collectors.

Where the employer elects to come within the terms of the Act as is permitted by Section 7035-5(2) of the Code, no positive action on the part of the employee is required in order to entitle such employee to the benefits of the said Act. See *Ham v. Mullins Lumber Co.,* 193 S. C., 66, 7 S. E. (2d), 712.

The settled law in this State is that the "basic purpose (of the Workmen's Compensation Act) is inclusion of employers and employees, and not their exclusion, and that its presumptions and its penalties are directed towards the end of effecting coverage rather than non-coverage."

It is the position of the appellants that the Act permits an employee to become a subscriber as to one part of its business and to remain a non-subscriber as to the rest of a business which is in substance and effect conducted as one business.

We cannot subscribe to this position, particularly under the facts of this case. Here we have a corporation which owns its timber and is engaged in manufacturing such timber into lumber, and as a convenient method of procuring the timber felled and hauled to its sawmills, it subcontracts this portion of the operation of its sawmills. (Of course if Helmey had been an independent logging operator, and was merely selling logs to the Ocmulgee Lumber Company, his employees could not claim under the Workmen's Compensation Act as against this Lumber Company.)

The precise situation here seems to be covered by Section 19 of the Workmen's Compensation Act (Section 7035-22 (a) of the Code), the first paragraphs thereof reading as follows:

"Where any person (in this section referred to as 'owner'), undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this article which he would have been liable to pay if the workman had been immediately employed by him."

This portion of Section 19 of the Act was interpreted in the case of *Marchbanks v. Duke Power Co. et al.,* 190 S. C., 336, 2 S. E. (2d), 825, 835, and we quote therefrom:

"After all, we are governed by the Act of our own State. It behooves us then to consider it and determine what that Act means, and to that end we must determine the intent of the Legislature, as it is diclosed by the language used in the Act. It is our task to discover the sense in which the words were used when the section was passed.

" 'In construing a statute, effect should be given to manifest intention of Legislature.' Second syllabus in *Fulghum v. Bleakley,* 177 S. C., 286, 181 S. E., 30.

" 'The Workmen's Compensation Act was adopted to protect industrial workers against the hazards of their employment, and to cast upon the industry in which they are employed a share of the burden resulting from industrial accidents.' *Walters v. Eagle Indemnity Co.,* 166 Tenn., 383, 61 S. W. (2d), 666, 667, 88 A. L. R., 654; citing *Partee v. Memphis Concrete Pipe Co.,* 155 Tenn., 441, 444, 295 S. W., 68.

"The elaborate and able argument of counsel for appellant seemed to find unnecessary ambiguities in the Workmen's Compensation Act for this State. In the first paragraph of Section 19 of the Act, which is that with which we are chiefly concerned, it does not appear to us that the intent of the Legislature in making the law, and its purpose, are hidden under verbose language, but is couched in plain language not hard to understand. * * *

"To us the plain interpretation of this language is that the lawmakers intended the term 'owner' to be synonymous with the principal contractor, that is to say the party of the first part to the contract with the 'subcontractor' who is the second party to the contract for the execution or performance of the work to be done by the owner. The primary purpose of a workmen's compensation act is to protect the workman who actually does the work. It is easily conceivable

that a contractor or subcontractor other than the owner may let a part of the work to be done to others who are financially irresponsible and that the employee of such contractor or subcontractor who is injured while doing the work is left without remedy. It is the clear purpose of the Act to make the 'owner', the person who is interested in having the work done, liable to the employee so injured."

The Act does not permit an employer to come under ■ the terms thereof for one part of his business and remain out as to another part of the business where, as in this case, it is substantially and necessarily conducted as one business. It was not the intention of the Legislature that the Act could be accepted in part and rejected in part. The Legislature recognized, however, that a person could operate a sawmill independently of logging operations, as where he owns no timber and buys the logs with which he operates his mill; and that a person could engage in logging operations independently of owning or operating a sawmill, as where he cuts his own timber and sells the logs on open market most advantageously.

It has been well stated by the Massachusetts Supreme Court, in the case of *In re: Cox*, 225 Mass., 220, 114 N. E., 281, 283:

"* * * If an employer becomes a subscriber he becomes a subscriber for all purposes as to all branches of one business with respect to all those in his service under any contract of hire. All the terms of the act are framed upon the basis that the employer is either wholly within or altogether outside its operation. There is no suggestion or phrase warranting the inference that there can be a divided or partial insurance.

"The practical administration of the act renders it highly desirable that a single rule of liability should apply throughout any single business. Otherwise difficult and troublesome questions often might arise as to liability or nonliability dependent upon classifications of employees and scope of their

duties. Litigation as to the line of demarcation between those protected by the act and those not entitled to its benefits would be almost inevitable. Instead of being simple, plain and prompt in its operation, such division of insurance would promote complications, doubts and delays."

We quote from the Annotation in 150 A. L. R., at page 1251, under the subhead note, "Work connected with lumbering"

"Various sorts of work carried on by independent contractors or subcontractors for principal employers engaged in lumbering or related occupations have been held to be so related to the trade or business of the principal employer as to charge him with liability for the compensation of injured employees of the contractor. *Lutz v. Long-Bell Lumber Sales Corporation,* 1934, La. App., 153 So., 319; *Stanley v. Industrial Lumber Co.,* 1940, La. App., 193 So., 367; *Owers v. Louisiana Long Leaf Lumber Co.,* 1943, La. App., 14 So. (2d), 275; *Pruitt v. Harker,* 1931, 328 Mo., 1200, 43 S. W. (2d), 769; *Morehead v. Grigsby,* 1939, 234 Mo. App., 426, 132 S. W. (2d), 237; *Heineman Lumber Co. v. Industrial Commission,* 1937, 226 Wis., 373, 276 N. W., 343."

The Louisiana case of *Owers v. Louisiana Long Leaf Lumber Co.,* cited above (decided in 1943 and reported in 14 So. (2d), 275), has been read by us with interest. In that case the right to compensation from the lumber company of an employee of a contractor who had been engaged by the lumber company to cut, haul and deliver fence posts from the lumber company's land at a fixed price per post, injured while engaged in this work, was said to depend upon whether the cutting, hauling and delivering of these fence posts was incidental and necessary to the operation of the lumber company's business of sawing lumber and operating a sawmill. Under the facts of that case, it being undisputed that these posts were used to fence the lumber company's plant which it was necessary to do for the protection of the

sawmill while cutting lumber for the Government in furtherance of the war effort, it was held that the lumber company and the contractor were liable to the contractor's employee for compensation on account of his injury.

We are aware of the fact that the cases referred to in 150 A. L. R. do not apprise us if the statutes under which these cases were decided contained a provision similar to the South Carolina Compensation Act, but the logic of these cases appeals to us; and as aforestated, we do not think it was the intendment of the Legislature of this State to so divide one business that the owner thereof could accept the benefits of our compensation Act as to one feature of his business and reject it as to another feature of the same business.

The judgment appealed from is affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.