GREEN BAY PACKAGING, INC., and another, Respondents, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Appellants: SIEMZUCH and another, Defendants.[*]

*No. 587 (1974).  Submitted on briefs February 4, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 422.)

---

[3] *See:* sec. 402.316 (2) and (3), Stats.
[*] Motion for rehearing denied, without costs, on June 2, 1976.

For the appellants the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Lowell E. Nass,* assistant attorney general.

For the respondents the cause was submitted on the brief of *H. R. Klueter,* attorney, and *E. E. Larson,* of counsel, both of Wausau.

For the respondents there was a brief filed by *E. E. Larson* and *Jones, Larson, Charnholm, Anderson & Rouse,* all of Wausau.

WILKIE, C. J.  In this workmen's compensation case the sole issue is whether the defendant Arthur Majeske, the immediate employer of Marcin Siemzuch, the deceased husband of the claimant Maria Siemzuch, was a "contractor under" the respondent Green Bay Packaging, Inc., within the meaning of sec. 102.06, Stats. The circuit court reversed a determination to that effect by the Department of Industry, Labor, and Human Relations. We reverse, concluding, as a matter of law, that Arthur Majeske was such a "contractor under."

The facts in this case are essentially undisputed. Marcin Siemzuch was employed by Arthur Majeske to cut hardwood on land for which Majeske owned the "stumpage" rights. The wood was to be delivered to the Green Bay Packaging, Inc. (GBP) for use in the manufacture of paper. In October of 1971 Siemzuch was killed by a falling maple tree. Majeske had entered into a contract with GBP for the calendar year 1971, which required Majeske to deliver by truck to the GBP yard 300 cords of mixed hardwoods of specific kinds and dimensions. GBP does not cut hardwood itself, nor does it directly employ men to cut it. Neither was any of the wood to be cut from lands in which GBP had any stumpage rights. In fact, GBP had no interest whatsoever in where Majeske got the wood to deliver. GBP made no advances to Majeske, and did not supply equipment or supplies of any kind. When the wood was delivered to GBP the wood was measured and Majeske was paid accordingly. GBP did reserve in the contract the right to "from time to time send its representative to inspect the pulpwood as being produced or loaded and for that purpose the seller [Majeske] agrees to afford such representative such assistance as may be necessary to aid in such inspection." The only testimony concerning this clause was a statement that the GBP representative would "occasionally" stop by areas where wood was being

cut, but not necessarily to areas where Majeske (or his employees) were working.

Citing the "inspection" clause of the contract, and the specifications for wood set forth in the contract, DILHR found that GBP had "a large measure of control over the details of the manner in which the work was performed under the contract," and that "Majeske was a contractor under [GBP] as provided by Wisconsin Statute 102.06."

On GBP's petition for review of the DILHR determination, the circuit court found, as a matter of law, that Majeske was not a "contractor under" GBP and judgment was entered to that effect, reversing the DILHR determination.

## "Contractor under" within Sec. 102.06, Stats.

In determining whether Arthur Majeske was a "contractor under" GBP within sec. 102.06, Stats., it is clear that only a question of law is involved.[1]

One of the most important sections of the Wisconsin Workmen's Compensation statute is sec. 102.06, which provides:

"102.06  **Joint liability of employer and contractor; loaned employes.** An employer shall be liable for compensation to an employe of a contractor or subcontractor under him who is not subject to this chapter, or who has not complied with the conditions of s. 102.28 (2) in any case where such employer would have been liable for compensation if such employe had been working directly for him, including also work in the erection, alteration, repair or demolition of improvements or of fixtures upon premises of such employer which are used or to be used in the operations of such employer. The contractor or subcontractor (if he is subject to the Workmen's Compensation Act) shall also be liable for such compensation,

---

[1] *Heineman Lumber Co. v. Industrial Comm.* (1937), 226 Wis. 373, 276 N. W. 343.

but the employe shall not recover compensation for the same injury from more than one party. In the same manner, under the same conditions, and with like right of recovery, as in the case of an employe of a contractor or subcontractor, described above, an employer shall also be liable for compensation to an employe who has been loaned by him to another employer. The employer who becomes liable for and pays such compensation may recover the same from such contractor, subcontractor or other employer for whom the employe was working at the time of the injury if such contractor, subcontractor or other employer was an employer as defined in s. 102.04."

One of the earliest cases in which this section was considered is *Great A. & P. Tea Co. v. Industrial Comm.*[2] In *A. & P.*, a contractor, Arnold Arndt, was engaged by A. & P. to regularly truck butter from Baraboo to Milwaukee. A truck driver, Robert Hattle, was killed while making such a delivery and the Industrial Commission's compensation award was affirmed by this court, in the following language:

". . . As Arndt [subcontractor] was not within the act or covered by insurance, and the service which Hattle [employee] was performing was for [A. & P.'s] benefit and was of *such nature that [A. & P.] would have been liable for compensation if [employee] had been working directly for [A. & P.]*, it is still wholly within the scope and legitimate purposes of the act to impose the compensation burden on [A. & P.] as the *proprietor of an industry* upon which the legislature has seen fit to impose the burden of the loss because of such an industrial injury.

"Thus construed, sec. 102.06 'conserves to the employee the indemnity intended to be given him by the legislature by making contractors liable for injuries received by employees of a subcontractor who is not under the act. *They will be careful to protect themselves and will also*

---

[2] (1931), 205 Wis. 7, 236 N. W. 575.

see to it that their subcontractors are protected against such losses.' *Miller v. Industrial Comm.*, 179 Wis. 192, 190 N. W. 81." (Emphasis added.)[3]

This construction of sec. 102.06, Stats., emphasizes the literal language of the statute making an employer liable where he "would have been liable for compensation if such employee [of the contractor or subcontractor under] had been working directly for him."

Two years later this court, in *Madison Entertainment Corp. v. Industrial Comm.*,[4] abandoned the *A. & P.* doctrine. In *Madison Entertainment Corp.* an injured baseball player (F. J. Kleinheinz) was employed by a team (managed by E. L. Lenahan) which contracted with Madison Entertainment Corporation to perform at Breese Stevens Field. Kleinheinz was injured and attempted to collect workmen's compensation from Madison Entertainment. The court found that the words "contractor or subcontractor under" must be given a more restricted meaning, consistent with the underlying antifraud purpose of the statute:

". . . While it may be difficult to set precisely the boundaries of the restriction, we think it may accurately be said that the statute was *intended to deal with situations where a person or corporation discharges his or its duties under a contract by subletting work, or where such person or corporation delegates his or its usual business to another under contract.*

"The editor of an elaborate note in 58 A. L. R. 872, in commenting upon statutes of this type, states:

" 'It would seem that the chief purpose of provisions of this type is to protect the employees of subcontractors who are not financially responsible, and to prevent employers from relieving themselves of liability by doing through independent contractors what they would other-

---

[3] *Id.* at pages 14, 15.
[4] (1933), 211 Wis. 459, 248 N. W. 415.

wise do through direct employees.' " (Emphasis supplied.) [5]

Under this interpretation, *Madison Entertainment* was not liable because its business was promoting use of the facility, not running a baseball team, and therefore it "was not attempting to discharge its business through independent contractors"[6] and thus avoid liability under the workmen's compensation law. *Madison Entertainment* has been followed in a line of cases since 1933.[7] The invariable ingredient, the absence of which has prevented recovery under the "contractor under" provisions of sec. 102.06, Stats., is that the alleged "contractor under" must be engaged in the principal employer's "ordinary and usual business."

This line of cases runs counter to the clear and express language of the statute, as pointed out in the *A. & P. Case*. It is clear from the statute that an employer such as GBP shall be liable for compensation to an employee of a contractor or subcontractor under him, such as Arthur Majeske, ". . . who has not complied with the conditions of sec. 102.28 (2), Stats., in any case where such employer [GBP] would have been liable for compensation if such employe [Marcin Siemzuch] had been working directly for him." Here there is no question that Majeske did not carry the required workmen's compensation insurance. The language is crystal clear and does not permit of the qualifying restriction added by *Madison Entertainment* which requires that a contractor under

[5] *Id.* at page 463.

[6] *Id.* at page 464.

[7] *For example: Employers Mut. Liability Ins. Co. v. Industrial Comm.* (1937), 224 Wis. 527, 272 N. W. 481; *Heineman Lumber Co. v. Industrial Comm., supra,* footnote 1; *City of Hudson v. Industrial Comm.* (1942), 241 Wis. 476, 6 N. W. 2d 217; *Marinette County Fair Asso. v. Industrial Comm.* (1943), 242 Wis. 552, 8 N. W. 2d 268; *Britton v. Industrial Comm.* (1946), 248 Wis. 549, 22 N. W. 2d 525.

be performing part of the "ordinary and usual" business of the principal employer.

It is true that for years this court has followed the rule that where the court has placed a certain construction upon a statute, such construction becomes a part of the statute and subsequent legislative inaction is deemed to be approval of such construction.[8] But there are two entirely different situations in which the application of this rule is sought. In the first, this court has made an interpretation which is followed by the refusal of the legislature to make any change in the statute, even though bills making such a change are submitted for its action.[9] The second situation is entirely different. There, as in the instant case, the ruling of this court is followed by a period of inaction on the part of the legislature, where there is no evidence that this court's interpretation was brought to the attention of the legislature.

Since this court's 1933 interpretation of sec. 102.06, Stats.,[10] there has been nearly complete legislative inaction in regard to the definition of contractor under. No bills have been introduced to amend the substance of this definition from 1933 through the current 1975 session of the legislature,[11] with one exception. In the 1943

[8] *State ex rel. Klingler & Schilling v. Baird* (1972), 56 Wis. 2d 460, 467, 468, 202 N. W. 2d 31; *Estate of Pamanet* (1970), 46 Wis. 2d 514, 175 N. W. 2d 234, 177 N. W. 2d 105; *Chart v. Gutmann* (1969), 44 Wis. 2d 421, 171 N. W. 2d 331, certiorari denied, 397 U. S. 973, 90 Sup. Ct. 1089, 25 L. Ed. 2d 267; *Zimmerman v. Wisconsin Electric Power Co.* (1968), 38 Wis. 2d 626, 157 N. W. 2d 648.

[9] *Cook v. Industrial Comm.* (1966), 31 Wis. 2d 232, 142 N. W. 2d 827; *De Leeuw v. ILHR Department* (1976), 71 Wis. 2d 446, 238 N. W. 2d 706.

[10] *Madison Entertainment Corp. v. Industrial Comm., supra,* footnote 4.

[11] Revisor's bill, ch. 143, Laws of 1947, effective May 22, 1947, did not affect the definition of contractor under, but merely provided that a contractor under would himself be primarily liable only if he is subject to the Workmen's Compensation Act, and

legislative session, Senate Bill 210, which eventually became law as ch. 270, sec. 6, Laws of 1943, did amend sec. 102.06 by providing coverage where the employee of the uninsured contractor under was performing "work in the erection, alteration, repair or demolition of improvements or of fixtures upon premises of such employer which are used or to be used in the operations of such employer." This bill was a specific response to this court's 1942 decision in *City of Hudson v. Industrial Comm.*[12] which held that an employee of a contractor making repairs on a city bridge was not an employee of a contractor under. The comments of the advisory committee on this proposed change, prepared for the legislative committees at the time of hearings and unanimously agreed upon by the committee, state the following:

"Section 6. 102.06 In the recent case of *City of Hudson v. Industrial Comm.*, the court held that the city of Hudson did not become liable to employes of a contractor engaged in the business of repairing the city of Hudson bridge, although the city had its own men constructing and repairing concrete abutments at the time of injury to the employe of the contractor. Other decisions leave doubt as to the intent of 102.06 as to who is to be considered a 'contractor under' an employer subject to the act. The court has commented that the provision was intended to and does apply only to those situations where a principal enters into a contract to have some part of the work ordinarily and customarily done by him done by a contractor.

"The present amendment makes it clear that if the work being performed by the contractor is in the 'erection, alteration, repair or demolition of improvements or of fixtures upon premises of such employer which are used or to be used in the operations of such employer,' the principal employer will become liable for payment of compensation to employes of the contractor who is without compensation insurance or who is not subject

secondarily liable only if he is an employer as defined in sec. 102.04, Stats.

[12] (1942), 241 Wis. 476, 6 N. W. 2d 217.

to the Workmen's Compensation Act. This, it is believed, will enforce the original intent of 102.06 and provide for broader coverage of contractors' employes than under the narrowing decisions which the court has rendered.

"The principal employer can always protect himself by making certain that his contractor has compensation coverage. Insured employers will merely have to pay premium on employes of the contractor in the event that the contractor is without insurance."[13]

The postenactment footnote to the revised section incorporated in the Workmen's Compensation Act pamphlet of 1943 is:

"This amendment was effected by Chapter 270, Laws of 1943, effective June 10, 1943. It is not intended to limit the other provisions of this section, but to make clear that if work is being performed under the circumstances stated, liability will exist against the principal employer as provided. The intent is to provide for broader coverage of contractor employes than obtains under the narrowing decisions which the court has rendered, the last being in the case of *City of Hudson v. Industrial Comm.*, 241 Wis. 476."[14]

The comments of a legislatively created advisory committee are relevant in construing statutes and ascertaining the legislative intent of statutes recommended by that committee.[15] So, too, are annotations in the biennial Workmen's Compensation Act pamphlet.[16] Although a

[13] Legislative Reference Library No. 1290, *Comments on Amendments Unanimously Agreed Upon By Advisory Committee On Workmen's Compensation Legislation 1943*, pp. 4, 5, sec. 6.

[14] Workmen's Compensation Act of Wisconsin, with Amendments to June 10, 1943, Ind. Comm., page 6, note 12.

[15] 2A Sutherland, *Statutory Construction* (Sands 4th ed.), p. 206, sec. 48.07.

See also: *Wisconsin Electric Power Co. v. Department of Revenue* (1973), 59 Wis. 2d 106, 114, 207 N. W. 2d 841; *Buehler Brothers v. Industrial Comm.* (1936), 220 Wis. 371, 374, 265 N. W. 227; *Pellett v. Industrial Comm.* (1916), 162 Wis. 596, 156 N. W. 956.

[16] *Valentine v. Industrial Comm.* (1944), 246 Wis. 297, 300, 16 N. W. 2d 804.

partial legislative amendment may indicate approval of the unaffected parts of the law which have been previously construed,[17] we conclude that this is not the case here. It is clear from both the comments and the footnote of the advisory committee that there was no legislative intent to approve of the prior narrowing constructions of sec. 102.06, Stats., made by this court. Indeed the opposite inference appears to be more reasonable. From 1933 until the present, there was total legislative inaction, broken only by one particular amendment which was aimed at this court's *Hudson* decision, but which did not indicate approval of this court's prior narrowing construction in *Madison Entertainment* and other related cases.

Where, as here, there is nearly complete legislative inaction following an interpretation of a statute by this court, this legislative action is to be considered as evidence that the legislature agrees with that interpretation, but not as raising a conclusive presumption of tacit adoption and ratification by the legislature. The weight accorded to this evidence is overcome where this court can unequivocally conclude, as here, that the prior construction is contrary to the clear and express language of the statute. The aim of all statutory construction is to discern the intent of the legislature, and where the meaning of the statute is plain, this is better evidence of the true legislative intent than nearly complete legislative inaction following a construction by this court.

Years ago, Mr. Justice EDWARD FAIRCHILD, in a dissent in *Frye v. Theige,*[18] supported the view that "legislative silence, standing alone, is not sufficient to indicate that the legislature has acquiesced in the court's construction." Sutherland, in his authoritative work on statutory construction, states that, while reversal of prior statutory interpretations is a rare event, "courts are not bound by

---

[17] Sutherland, *supra,* footnote 15, at p. 262, sec. 49.10.
[18] (1948), 253 Wis. 596, 604, 34 N. W. 2d 793.

*stare decisis* to follow a previous interpretation later deemed to have been erroneous."[19] As for legislative inaction, he notes that it has been called " 'a weak reed upon which to lean' and a 'poor beacon' to follow in construing a statute."[20] In the case at bar there has not been total legislative inaction, because of the 1943 amendment. However, as explained above, we conclude that this single, narrow amendment does not in any way indicate approval of the prior constructions, and that the overall picture is one of legislative inaction since 1933.

The mistake of *Madison Entertainment* and its successive cases with respect to the interpretation of sec. 102.06, Stats., is manifest. We conclude that those cases should be overruled, and this court should follow, once again, the interpretation of sec. 102.06 as made in the *A. & P. Case*.

In returning to the *A. & P.* standard we do not mean to impose liability upon principal employers for the employees of all persons with whom they may have contractual relations, however slight. In *A. & P.* it was stated:

". . . sec. 102.06 was not intended to make an employer liable to the injured employees of every one with whom the employer had some sort of contractual relations."[21]

By a contractor under we mean to refer to one who regularly furnishes to a principal employer materials or services which are integrally related to the finished product or service provided by that principal employer. In the instant case Majeske regularly furnished pulp to Green Bay Packaging and pulp is obviously integrally

---

[19] Sutherland, *supra,* footnote 15, at p. 238, sec. 49.05; *see also:* Dickerson, *The Interpretation and Application of Statutes,* pp. 252–255.

[20] Sutherland, *supra,* footnote 15, at p. 261, sec. 49.10.

[21] *Great A. & P. Tea Co. v. Industrial Comm., supra,* footnote 2, at page 11.

related to the packaging materials sold by GBP. Majeske was therefore a contractor under GBP within the meaning of sec. 102.06, Stats.

Any previous rulings of this court contrary to this opinion are reversed. The workmen's compensation law of this state must be liberally construed to reach the objectives of that law.[22] The general recognition of the "contractor under" protection provisions of most workmen's compensation laws is discussed by Larson in his encyclopedia on workmen's compensation. In part, he states there:

"Forty-one states have adopted 'contractor-under' statutes, imposing on the general employer compensation liability (sometimes joint, sometimes primary, but usually secondary) to the employees of contractors (in most instances uninsured contractors) under him.

". . .

"The purpose of this legislation was to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to *pass upon their responsibility and insist upon appropriate compensation protection* for their workers." (Emphasis added.)[23]

*By the Court.*—Judgment reversed.

[22] *Neese v. State Medical Society* (1967), 36 Wis. 2d 497, 504, 153 N. W. 2d 552, and cases there cited; *Johnson v. Wisconsin Lumber & Supply Co.* (1931), 203 Wis. 304, 310, 234 N. W. 506, 72 A. L. R. 1279.

[23] 1A Larson, *Workmen's Compensation Law*, ch. IX, sec. 49.11.