MARYLAND CASUALTY CO., and another, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Respondents.

*No. 75–366. Argued March 29, 1977.—Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 228.)

For the appellants there were briefs by *Crowns, Merklein, Midthun & Metcalf,* and oral argument by *Byron Crowns* and *Jerold Gilbert,* all of Wisconsin Rapids.

For the Department of Industry, Labor and Human Relations the cause was argued by *Stephen M. Sobota,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent Jean Hazelquist there was a brief by *O'Melia, Melby, Smith & Schiek, S. C.* and oral argument by *William A. Melby,* all of Rhinelander.

HANLEY, J. The sole issue is whether Lillian Onopa, who was the immediate employer of the claimant, was a "contractor under" the appellant Weight Losers within the meaning of sec. 102.06, Stats.

Sec. 102.06, Stats., provides:

"102.06 *Joint liability of employer and contractor; loaned employes.* An employer shall be liable for compensation to an employe of a contractor or subcontractor under him who is not subject to this chapter, or who has not complied with the conditions of s. 102.28 (2) in any case where such employer would have been liable for compensation if such employe had been working directly for him, including also work in the erection, alteration, repair or demolition of improvements or of fixtures upon premises of such employer which are used or to be used in the operations of such employer. The contractor or subcontractor (if he is subject to the Workmen's Compensation Act) shall also be liable for such compensation, but the employe shall not recover compensation for the same injury from more than one party. In the same manner, under the same conditions, and with like right of recovery, as in the case of an employe of a contractor or subcontractor, described above, an employer shall also be liable for compensation to an employe who has been loaned by him to another employer. The employer who becomes liable for and pays such compensation may recover the same from such contractor, subcontractor or other employer for whom the employe was working at the time of the injury if such contractor, subcontractor or other employer was an employer as defined in s. 102.04."

The question of whether Mrs. Onopa was a "contractor under" Weight Losers within the meaning of sec. 102.06 is one solely of law. *Green Bay Packaging, Inc. v. ILHR Department,* 72 Wis.2d 26, 28, 240 N.W.2d 422 (1976).

In *Green Bay Packaging, supra,* this court reversed its prior interpretation of the "contractor under" provision of sec. 102.06. The court overruled the decisions in *Madison Entertainment Corp. v. Industrial Comm.,* 211 Wis. 459, 248 N.W. 415 (1933), and its successive cases, which held that to be a "contractor under" within the meaning of sec. 102.06, the alleged "contractor under" must be engaged in the "ordinary and usual business" of the principal employer.

Concluding that this interpretation, applied since 1933, was too restrictive and contrary to the express language of the statute, the court returned to the interpretation set forth in *Great A. & P. Tea Co. v. Industrial Comm.,* 205 Wis. 7, 236 N.W. 575 (1931). The construction of sec. 102.06 in the *A. & P.* case emphasizes the literal language of the statute making an employer liable where he "would have been liable for compensation if such employe [of the contractor or subcontractor under] had been working directly for him."

In *Green Bay Packaging, supra,* the court set forth the applicable construction of "contractor under" at page 36:

"By a contractor under we mean to refer to one who regularly furnishes to a principal employer materials or services which are integrally related to the finished product or service provided by that principal employer."

This standard is a more liberal construction of the statute to protect employees from uninsured contractors by imposing liability upon the principal employer who has within his power the ability to pass upon the responsibility of the contractor and to require that the contractor carry appropriate compensation protection for their workers.

The department concluded that Mrs. Onopa was a "contractor under" Weight Losers, but did not make the specific finding of fact that she furnished to Weight Losers services which are integrally related to the service provided by Weight Losers. The department did, however, make the following findings:

"That on November 10, 1972 Mrs. Onopa was a franchisee of Weight Losers International under a written franchise agreement dated June 1, 1972 for a term of five years beginning January 14, 1972; that the franchise was purchased for a specific amount of money per

county; that under this agreement respondent Weight Losers International retained significant control of the business operations of Mrs. Onopa; that according to provision No. 5 of the franchise agreement the franchisee's classes were to be operated in the manner set forth in the operation manual of Weight Losers International; that according to provision No. 2 of the franchise agreement a minimum number of classes had to be held on specified days and locations; that the franchisee obtained all her supplies, labels, designs, scales and publications exclusively from Weight Losers; that the Weight Losers operation manual defines a Weight Losers International franchisee as 'a Weight Loser who had entered into a contractual agreement with Weight Losers International Home Office . . .'; that the franchisee agreed to carry public liability insurance, property damage insurance, and malpractice insurance; that there was no agreement set forth in the franchise for workmen's compensation insurance; that the franchise authorized termination of the franchise for noncompliance on the part of the franchisee with the terms of the franchise as well as the terms of the operation manual; that Weight Losers International retained the right to inspect the premises where the franchisee conducted her business operations; that the individual Weight Losers paid a membership fee specified by Weight Losers International; that a percentage of this fee was paid by franchisee to Weight Losers International; that the franchise was nonassignable; that Mrs. Onopa in her capacity as a Weight Loser franchisee was carrying on the business of promoting the name and reputation and business of Weight Losers International;"

Taken as a whole, we think these findings are adequate to constitute an ultimate finding of fact that Mrs. Onopa regularly furnished to Weight Losers a service integrally related to the service provided by Weight Losers. The major issue, therefore, is whether there is any credible evidence to support that finding. *Consolidated Papers, Inc. v. ILHR Department,* 76 Wis.2d 210, 213–16, 251 N.W.2d 69 (1977).

We find the evidence is sufficient to support the conclusion that Mrs. Onopa furnished a service integrally related to Weight Losers' service. Mrs. Onopa solicited members, hired instructors, and supervised and administered the educational operations of Weight Losers for the geographical area stated in the franchise agreement. The service of Weight Losers, the record shows, extended to the level of the individual persons who attended the classes. These persons who registered did not become members solely of Mrs. Onopa's unit; they became members of Weight Losers and were registered in official serial numbered membership books. A percentage of each individual's membership fee was paid to Weight Losers. The franchise agreement required that instructors be certified by Weight Losers, and further, that the franchisee's business and classes be operated in accordance with rules and regulations published by Weight Losers. Weight Losers had the right to inspect the franchisee's operations and required the filing of regular reports. The record supports the conclusion that Weight Losers' service was not merely to supply its franchisees, but rather to provide quality weight reduction and dietary control classes and materials to its members. Weight Losers was not simply a "wholesaler" of its products and information to its franchisees. The supervision and administration of classes, the hiring of instructors, and especially the solicitation of members are integral parts of Weight Losers' service.

Weight Losers and its insurer contend that the department's determination in the instant case is erroneous as a matter of law upon the authority of *Deep Rock Oil Co. v. Derouin*, 194 Wis. 369, 216 N.W. 505, (1927). We do not agree with this contention.

The *Deep Rock* case did not involve a franchise relationship such as that in the instant case. In *Deep Rock*, the Deep Rock Oil Company of Wisconsin leased a ser-

vice station to the Brown County Deep Rock Oil Company. Pursuant to the agreement, the lessor agreed to sell only "Deep Rock" products at the service station. The lessor, under the agreement, reserved no right to direct the method of conducting the business of the lessee. No provision in the contract required the lessee to account for the proceeds of the sales of the lessor's products. The court held that insofar as the agreement between the parties created any relation other than that of lessor and lessee, it amounted to an executory sales contract. Most significantly, the court found that the business of the lessee in disposing of the products was a separate and distinct business from that of the lessor. *Id.* at 375. Under these circumstances, the lessee was not a "contractor under" as set forth in *Green Bay Packaging, supra,* because, since the businesses were distinct, the lessee was not performing a service integrally related to the service of the lessor.

The instant case is, therefore, clearly distinguishable from *Deep Rock.* Here Weight Losers retained significant control of Mrs. Onopa's business operations. Their businesses were not separate and distinct. Mrs. Onopa performed a service integrally related to Weight Losers' service. In *Deep Rock* none of the contractual obligations created by the lease required the lessee to perform any work for the lessor which was of such nature that the lessor would have been liable for compensation to an injured employee if such employee had been working directly for such lessor. In that respect *Deep Rock* is distinguishable from the case at bar, and that distinction is very significant because, by the express terms of sec. 102.06, the employer's liability for compensation to an injured employee of an independent contractor arises only when such employer would have been liable for compensation if such employee had been working directly for such employer.

We conclude that Mrs. Onopa was a contractor under Weight Losers within the meaning of sec. 102.06, Stats.

*By the Court.*—Judgment affirmed.