R. E. Brewer, Appellee,

*v.*

Pocahontas Fuel Company, Appellant.

425 S.W.2d 582.

(*Knoxville*, September Term, 1967.)

Opinion filed March 8, 1968.

Egerton, McAfee, Armistead & Davis, Knoxville, for appellee; W. Keith McCord, Knoxville, of counsel.

Lee Asbury, Jacksboro, and William J. Turnblazer, Middlesboro, for appellant.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This is a Workmen's Compensation case wherein the Chancellor found in favor of the employee and fixed his disability at permanent partial disability of seventy (70%) per cent to the body as a whole. The employer seasonably filed a petition to rehear, which was denied, and has appealed both parties filing very able briefs before us. After reading the record, these briefs, and authorities, we are now in a position to determine the questions here involved.

To the petition on behalf of the employee filed herein, the employer filed a plea in abatement based on the fact that any accident or injury of this employee had happened in the State of West Virginia under a contract made either in Virginia or West Virginia and not in this State and that there was no right of action in Tennessee. This plea in abatement was seasonably overruled and an answer filed in which it is set forth that any injury this man had happened while he was working for this employer in the State of West Virginia under a contract made in that State. The employee was a resident of the State of Virginia.

The petition on behalf of the employee alleges that the employee was injured while working for this employer on March 11, 1961, and that while thus working he sustained an injury to his back while lifting a heavy piece of equipment.

This record shows that for this injury which happened in Tennessee at the Morco Mine of the employer he was paid weekly compensation by checks issued by the company up until February 28, 1962. At this time his doctor told the man and the company that he was much improved and advised him that he could resume work which he did. He then worked for the defendant who had mines in both Tennessee and West Virginia until July 26, 1962, when he aggravated or re-injured his back and he was then let off and paid weekly benefits by the defendant on the same payroll sheet as paid for the injury of March 11, 1961. This sheet, showing these payments, doctors' bills, etc., of the defendant, shows under remarks that the injury was of March 11, 1961, and that it was aggravated on July 26, 1962, and these payments then continued until August 19, 1963. On this sheet the initials are R.T.W. 2/28/62, which apparently from this record would mean a return to work on February 28, 1962, and he worked until July 28, 1962.

This record also shows that on April 20, 1962, Dr. Henderson saw this man and says in his Progress Report that "at which time he is working, although he still has some pain and weakness about the injured portion of his back. He was advised about care at home, and continuing at work." The record also shows that on June 25, 1962, he was again seen by this doctor and at that time the doctor made the note, "he is working but continues to have annoying pain and weakness about his lower back."

Again on July 21, 1962, the doctor makes the notation again that "he is working but his condition has worsened somewhat. He was given an ultrasonic treatment and advised about care at home, and continuing at work." On July 26, 1962, he was again seen by this doctor, and the doctor made the notation that on this date, that is July 26, 1962, "he has an aggravation of his back pain and weakness as the result of doing heavier lifting than usual. He was given an ultrasonic treatment and advised about guarded activity, care at home and returning."

Based on such evidence the trial judge found that the employee's payments as paid to him beginning in July, 1962, were a continuation of the payments which had been made for the admitted injury he had in Tennessee on March 11, 1961, and that these payments having been made to this man until August, 1963, the suit had been brought within one year after August, 1963, or within one year after the last payment was made to him as compensation.

The company argues very forcibly and ably that this record shows that this was a West Virginia contract and not a Tennessee contract; that these payments made from July, 1962, were payments made for an injury received in West Virginia and had nothing to do with the Tennessee injury. They argue very forcibly that this being true under the authority of *Davis v. Swift & Co.*, 175 Tenn. 210, 133 S.W.2d 483, and sec. 50-917, T.C.A., this man was working out of the State under a contract, etc., not made in Tennessee and consequently under the *Davis v. Swift* case and the statute referred to he could not bring his cause of action in this State.

From what has just been said above though it is evident, and based on material evidence, that the Chan-

cellor based his finding of the disability of this man on an aggravation of the Tennessee injury and was not for any injury received by the man while working out of the State. Clearly, this deduction can be reached from this record as the records of the company itself show that these payments were made for the Tennessee injury. For instance, one of the exhibits in the record is a check from the defendant to this man, dated January 8, 1963, which shows that it was for Workmen's Compensation and was a payment from December 27, 1962, to January 9, 1963, on account of an accident which happened at Morco Colliery, which is in Tennessee, and was the same kind of check which was written in payment to him for work from July 9 to July 22, 1961, for this injury of March 11, 1961. Thus it is, by this evidence and this finding alone, there was ample material evidence to support the finding of the trial court.

■ Counsel frankly recognizes the unwaivering rule of this Court followed since the Compensation Act was passed in 1919, and, as provided by that Act, if there is any material evidence to support the finding of the trial judge on appeal this Court is bound by the finding of the trial judge. It is argued though that the facts here are undisputed and that there are no conflicting inferences with respect to the ultimate fact which can be drawn therefrom, and that we should not be bound by the conclusions of the Chancellor of unsupported facts upon which a different conclusion might be reached from that of the trial court on the same finding of fact, citing as authority for this argument the cases of *Wilson v. Van Buren County,* 196 Tenn. 487, 268 S.W.2d 363; *Greeson v. American Lava Corp,* 216 Tenn. 461, 392 S.W.2d 931; and *Travelers Ins. Co. v. Googe,* 217 Tenn.

272, 397 S.W.2d 368. We have no fault to find with this proposition, as in writing the opinions in these cases we were merely trying to interpret the law as we understood it in this State. But here, as pointed out above, there is ample material evidence from the doctor of this man that even though he had started back to work in February, 1962, in a very short time thereafter and before the final termination of his work in July that he was being seen by this doctor for his back and things of that kind and his back was still bothering him and all of this was connected with the 1961 injury. In addition to this doctor's testimony the employee testifies to this fact himself herein, and when a company thus puts a person back to work and he really isn't able to go back to work and keeps suffering from his injury and they continue to pay him for this work this injury is connected and can be tied in with the original injury which caused the disability.

Such an argument, as made herein in behalf of the employer, really goes to weighing the testimony in this case, but, as indicated above and as counsel concedes, if there is material evidence to support the findings of the trial court, we are bound thereby.

One of the questions argued very forcibly and with much feeling is that the injury to the man's back arose while he was trying to hit a bat at his home with a broom when he fell and hurt his back again. The record shows that even after this was done, after the man did try to hit a bat with a broom, voluntary payments for benefits were continued for many months after this incident. Such a contention did not influence the Chancellor one way or the other and he apparently saw no merit therein. The petitioner testified about this, and said that he told his

doctor about the incident more to indicate the severity of his condition. He said that swinging the broom caused such severe pain in his back area, which had been injured before, that he slipped and fell against a table in the house. We cite this as an instance of the arguments made with reference to this petitioner's insistence.

There is no question but this man is probably obese· he weighs 240 to 270 pounds and is only five feet seven inches or so tall; his weight should not be over 155 to 160 pounds; and he suffers from hypertension and related problems from such a size and condition. The employer knew of all of these conditions, which did not preclude him from working, and, according to this record, he was working and doing a good job when he first injured his back in 1961, and due to this injury he did not work again until February, 1962. He must have been a pretty good worker because at that time the employer knowing all these things put him back on their payroll, and according to the doctor's testimony his back continued to bother him and that it was due to his back injury that he finally had to cease his employment in July, 1962.

As we see it, under the material evidence herein this injury is clearly tied to a Tennessee injury in a Tennessee mine and the trial judge in so finding has material evidence to support him.

We have had before us a number of times the application of the statutes, sec. 50-1003 **T.C.A. and sec.** 50-1017, T.C.A. In each of these instances where it is necessary we have determined that these two Sections should be treated together and that when an employer makes a voluntary payment of medical bills of the in-

jured employee this tolls the running of the statute of limitations. A number of cases can be cited for this proposition but the last one we had before us is *City of Bristol v. Reed,* 218 Tenn. 173, 402 S.W.2d 124, wherein among other things we said:

"Contrary to what the Appellant claims in its petition to rehear, we think these payments were not gratuitous, and even if they were erroneous, the error cannot erase the effect these payments had on the statute of limitations."

Then, too, the case of *Adams v. Patterson,* 199 Tenn. 603, 288 S.W.2d 453, is applicable herein. There this Court, speaking through the late Mr. Justice Tomlinson, reversed the trial court under this very statute and held that where payments of $30.00 a week were made to the injured employee even though the employee was entitled to only some $23.00 a week this was not a gratuity and it amounted to compensation and thus the man was entitled to compensation under this statute.

We have carefully read this record and are satisfied that there is material evidence to support the finding of the Chancellor and his decree is affirmed.