ARGONAUT INSURANCE COMPANY, Appellant-Defendant,

v.

S. E. VANATTA et al., Appellees-Plaintiffs,

and

American Mutual Liability Insurance Company, Appellee-Defendant.

Supreme Court of Tennessee.

July 12, 1976.

**36**

H. Francis Stewart, Robert L. Estes, Nashville, for appellant-defendant.

James H. Cummings, Marshall E. Duggin, Woodbury, Dewey W. Pedigo, Nashville, for appellees-plaintiffs.

John R. Rucker, Murfreesboro, for appellee-defendant.

OPINION

HARBISON, Justice.

This is an action for workmen's compensation benefits brought on behalf of the dependents of a deceased truck driver, James L. Vanatta. On this appeal the issues are the applicability of the Tennessee workmen's compensation law to the death of decedent, and the effect of a "trip lease" executed by him in connection with the freight delivery which he was making at the time of his death.

The decedent was killed in a single vehicle accident on November 3, 1971 while driving a tractor-trailer unit on U. S. Interstate 24 in Marion County, Tennessee. He resided in Cannon County, Tennessee but had been employed as a truck driver by Jack Cole-Dixie Highway Company at its terminal in Birmingham, Alabama.[1] He was dispatched from the Birmingham terminal, and this was unquestionably his base of operations. He was, however, sent into many other states by and on behalf of his employer, which is a certificated carrier operating in interstate commerce. Because the contract of employment was made in Alabama, and decedent was employed at the Birmingham terminal, it is insisted on behalf of his employer that Tennessee has insufficient contacts with the claim to make its workmen's compensation statute applicable.

---

1. This company is insured as to its workmen's compensation liability in Tennessee by appellant Argonaut Insurance Company.

Appellant relies upon the recent decision of this Court in the case of *Ray v. Aetna Casualty & Surety Co.,* 517 S.W.2d 194 (Tenn.1974), in which the Court held the Tennessee statute inapplicable to the claim there under consideration. In that case, however, the contract of employment was made in Missouri, and the injury occurred there. The only significant contact between the claim and the State of Tennessee was that the workman resided in Shelby County, and he had learned of his job opportunity through a local union in Memphis. Under these circumstances it was held that the claimant's remedy was under the workmen's compensation law of Missouri.

In the present case, however, not only did the deceased and his dependents reside in Tennessee, but the accident occurred in the state. The trial court held that under these circumstances a claim for workmen's compensation benefits could be asserted under the Tennessee statute. We are in agreement with this conclusion, even though upon these facts the family of the deceased might also have had a claim under the Alabama statute, had they seen fit to pursue the matter in that state. See *Millican v. Liberty Mutual Insurance Co.,* 224 Tenn. 604, 460 S.W.2d 842 (1970); *Brewer v. Pocahontas Coal Company,* 221 Tenn. 130, 425 S.W.2d 582 (1968); *United States Casualty Co. v. Standard Accident Insurance Co.,* 175 Tenn. 559, 136 S.W.2d 504 (1940). Accordingly, the assignment of error as to the jurisdiction of the Tennessee courts is overruled.

The remaining assignments of error by appellant arise out of and concern the consequences of the "trip lease" executed by the deceased truck driver a few days before his death. It is undisputed between the parties that the decedent was operating under this lease and was making a delivery for Diamond Transportation System, Inc. thereunder at the time of his fatal accident.

There is no question but that the Jack Cole-Dixie Highway Company (appellant's insured) was the general employer of the decedent. He was a regular truck driver for the company. Usually he was assigned to a unit owned by his father, S. E. Vanatta, and operated by the truck line under a "permanent lease" made between it and S. E. Vanatta in August, 1970. A copy of this document is in the record. Under its terms the equipment was placed under the control and direction of the lessee. While the document as filed makes no reference to the compensation to be paid to the owner, the testimony is undisputed that he received forty-six percent of the gross revenue produced by the vehicle while it was being operated on the business of the truck company. The owner was required to bear a number of the operating expenses, upkeep and maintenance on the vehicle. The lease agreement does not purport in any way to make the driver of the equipment an employee of the owner.

It is undisputed between the parties that in the latter part of October, 1971 the decedent was dispatched by the Birmingham office of his employer to take a load of merchandise from Anniston, Alabama to the vicinity of St. Paul, Minnesota. The employer did not have a return load to the southern region. The truck driver thereupon called the Birmingham terminal and requested permission to go to Hammond, Indiana to see if there was a return cargo there. From Hammond, he again telephoned the Birmingham terminal, and reported that there was no return load to the Birmingham area. He then requested permission to "find a load", and this permission was given. Later the decedent called the Birmingham terminal and advised that he was going to transport a load of tractors for Diamond Transportation System, Inc., and representatives of the employer gave permission for this to be done. The proof shows that at or about the same time several other employees of Jack Cole-Dixie Highway Company likewise transported cargoes for Diamond under "trip leases".

The authority of the decedent to execute a "trip lease" binding in its consequences upon the employer was the principal issue litigated in the trial court. On behalf of the employer, it was contended that the employee was merely "released" from his

permanent and regular employment with Jack Cole-Dixie Highway Company, in order that he might accept temporary employment with Diamond Transportation System, Inc. It is undisputed that on October 29, 1971 the employee did execute a trip lease form, showing Diamond Transportation System, Inc., as lessee and Jack Cole-Dixie Highway Company as lessor. The instrument was executed on behalf of the lessor by the decedent himself. The terms and provisions of this lease require the lessor to provide broad indemnity to the lessee, and expressly require the lessor to provide the driver's salary and workmen's compensation coverage.

On behalf of the employer it is insisted that the employee had no authority to bind it to provide compensation coverage while under a "trip lease". The employer's representatives testified that their interpretation of such a temporary or "spot" lease was that the driver became a temporary employee of the lessee; these witnesses testified that the employee was released from their control, and that the employer received no part of the revenue from the vehicle while it was operated under the temporary leasing arrangement. They testified that all of the revenue went either to the lessee, or to the owner of the equipment, who then made provision out of his share for the payment of the driver.

There is nothing in the written documents filed in the record to indicate what the practice of this particular employer was with regard to "trip leases", and the revenue to be derived therefrom. An official of Diamond Transportation System, Inc. testified that that company had a different arrangement, and that when its equipment was leased temporarily, it did share in the revenue produced therefrom.

Both of the carriers involved in this case, the general employer and the trip lessee, operated under certificates of convenience and necessity issued by the Interstate Commerce Commission. Certain rules of that Commission have application to the case.[2]

There is no question but that pursuant to those rules, insofar as the public was concerned, Diamond Transportation System, Inc. was required to and did assume responsibility for the equipment and the driver until delivery was accomplished. Temporary signs of Diamond were affixed to the vehicle, and Diamond advanced to the truck driver funds for out-of-pocket expenses. The driver was required to furnish to the trip lessee written evidence of his qualifications and physical fitness.

While they denied the resulting legal effect and consequences, at least two representatives of Jack Cole-Dixie Highway Company testified positively that the decedent did have authority to "trip lease" the equipment in question. There is no question but that he requested and was given permission to do so by his superiors. Representatives of the employer testified that they had not seen or examined closely the Diamond trip lease form in the past, but the record contains several other such leases executed on behalf of Jack Cole-Dixie Highway Company by other employees on prior occasions.

■ The Chancellor concluded, from a close and thorough examination of all of the evidence, that the decedent did have authority to execute the lease and that the employer was bound by its terms. We find material evidence in the record to support these conclusions by the Chancellor, and they are, therefore, binding upon this Court under the rules governing review of workmen's compensation cases.

■ It is insisted on behalf of the employer that if the lease document was insufficient to take decedent out of the scope and course of his employment with Jack Cole-Dixie Highway Company, nevertheless that company is entitled to indemnification by Diamond Transportation System, Inc., since the employee was actually engaged in making a delivery for that company at the time of his death.[3] This contention would,

2. 49 CFR § 1057.4, implementing 49 U.S.C. § 304(e).

3. Diamond Transportation System, Inc. is insured in the present case by appellee American

of course, have considerable merit, were it not for the terms and conditions of the trip lease itself, which cast the burden of indemnification and compensation upon the lessor.

The employer relies heavily upon the case of *Herron v. Fletcher*, 503 S.W.2d 84 (Tenn. 1973), in which the general lessee was held not to be liable, and workmen's compensation benefits were adjudged against the owner of the equipment and the trip lessee. In that case, however, the trial court found as a fact that the employee was not authorized to sign the trip lease agreement for the permanent lessee, and that the agreement was actually for the benefit of the owner of the equipment.

It is sufficient to state that in the present case the trial court has reached contrary conclusions upon the evidence before him, and that there is material evidence to support his findings. There was probably sufficient evidence in the present record to justify a finding that the employee was entitled to compensation benefits both from the general employer and from the trip lessee, but the trial court saw fit to allow recovery only against the former.

It is undisputed in the present record that trip leasing is a practice widely followed in the motor carrier industry. There have been a large number of reported cases, both state and federal, upon the consequences attaching to this practice. A substantial number of federal courts had concluded, prior to 1975, that some of the terms and provisions of standard trip leases were contrary to the Interstate Commerce Commission regulations and to public policy. An examination of these cases indicates that generally, under such documents, the lessor is required to hold the lessee harmless from most of the consequences of the conduct of the truck driver, as well as to bear all responsibility for injuries to the driver during the execution of the trip lease. A number of courts had concluded that these provisions were contrary to the requirements of the Interstate Commerce Commission that the certificated carrier using the equipment must assume responsibility for the equipment and safe delivery of the cargo. A substantial split of authority developed among the several United States courts of appeals. The United States Supreme Court granted certiorari in one of the cases, *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), and in its opinion it cited and discussed the cases decided by the lower courts.

The Supreme Court upheld the validity of indemnification provisions contained in trip leases such as that involved here. In that case the trip lessee had settled a substantial personal injury claim with a third person who was injured by the negligence of the truck driver. It then sought indemnification from the lessor pursuant to the terms of the trip lease. The trial court denied recovery, and its decision was affirmed by the United States Court of Appeals for the Seventh Circuit, 497 F.2d 926 (1974).

The United States Supreme Court reversed, and held that the indemnification provisions did not contravene public policy or existing regulations of the Interstate Commerce Commission. In concluding its opinion, the Court stated:

"We utter a word of caution: our decision is not to be regarded as an indication that the Commission, if it so chooses upon study of the problem, may not one day regulate or even proscribe indemnification as between lessee and lessor. We merely hold that the present regulations may not be so interpreted." 423 U.S. at 42, 96 S.Ct. at 236, 46 L.Ed.2d at 179–180.

The United States Court of Appeals for the Sixth Circuit, in the case of *Indiana Refrigerator Lines, Inc. v. Dalton*, 516 F.2d 795 (1975), reversing the United States District Court for the Middle District of Ten-

Mutual Liability Insurance Company. Neither of the two truck lines was joined as a party, but their interests, insofar as pertinent to this claim, were represented by their respective workmen's compensation carriers.

nessee, also upheld the hold-harmless provisions of a trip lease, and held the lessor liable to the lessee for theft of the cargo by the driver, after the lessee had indemnified the consignor under its bill of lading.[4]

While in some respects it may seem unjust to require the lessor to bear the expense of a workmen's compensation claim for a truck driver who is operating under the certificated authority of another, this is a matter which the respective employers may resolve by proper contract provisions under existing federal and state law. T.C.A. § 50–1012 expressly permits different employers to agree among themselves "as to the distribution of the ultimate burden" of workmen's compensation claims under the law of this state.

The lease form of Diamond Transportation System, Inc. used in the present case appears to be a rather standard one, insofar as an examination of the reported cases upon the subject reveals. The practice of trip leasing being a widespread one in the motor carrier industry, responsible officials authorizing their employees to engage in the practice must be aware of the consequences attaching thereto. Unless and until the Interstate Commerce Commission prohibits the insertion of hold-harmless and indemnification provisions in such leases, employers must protect themselves by limiting the authority of their employees, or else they must accept the consequences of a trip lease executed by an employee who is authorized to affix the signature of a carrier thereto. In the present record there is abundant material evidence to support the finding of the Chancellor that the decedent did have such authority. The employer's representatives may not have fully understood the legal effects of his making such leases, and may not have intended to confer such authority upon him. If not, however, they failed sufficiently to limit his authority, and the Chancellor correctly concluded that the trip lease was binding according to its terms.

The judgment of the trial court is affirmed at the cost of appellant.

COOPER, C. J., and FONES, HENRY and BROCK, JJ., concur.

---

4. The United States Supreme Court denied certiorari in this case, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975), after release of its opinion in *Transamerican Freight Lines, Inc., supra.*