Delores V. SHUDAREK, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and St. Michael's Hospital of Stevens Point, Inc., Defendants-Respondents.

Court of Appeals

*No. 81-2498. Submitted on briefs March 16, 1983.—Decided June 27, 1983.*
(Also reported in 336 N.W.2d 702.)

182

For the plaintiff-appellant the cause was submitted on the briefs of *Glinski, Haferman, Ilten, Mills & Drier, S.C.,* of Stevens Point.

For the defendants-respondents the cause was submitted on the brief of *Earl G. Buehler* and Labor and Industry Review Commission of Madison.

. Before Gartzke, P.J., Dykman, J. and W.L. Jackman, Reserve Judge.

DYKMAN, J. Delores Shudarek appeals from the trial court's judgment affirming the Labor and Industrial Commission's decision denying her unemployment compensation benefits. She argues that she did not voluntarily terminate her employment under sec. 108.04(7)(a), Stats., and that her termination violated her right to religious freedom under the United States and Wisconsin Constitutions. We affirm because we conclude that Shudarek voluntarily terminated her employment and that the termination did not violate her right to religious freedom.

Shudarek was a sister in a Catholic religious order since 1948 and worked in various hospitals for several years. She was employed since 1976 as a pastoral associate by St. Michael's Hospital of Stevens Point. Her job duties included helping the patient and his or her family accept all aspects of the patient's illness, providing spiritual assistance to patients and their relatives and assisting hospital personnel. The job description, revised as of March 14, 1980, contained the statement that both religious and lay people could occupy the position. Endorsement by the bishop of the diocese was specifically stated as a prerequisite to employment, although there was testimony at the hearing that endorsement had not always been required.

Shudarek decided to leave her religious order for personal reasons not contained in the record. She discussed

her decision to leave with her immediate supervisor. He encouraged her to take time off to reconsider her decision. She returned a few weeks later and informed him that her decision to leave the order remained the same. Her supervisor contacted the hospital's personnel director, and they informed her of her termination benefits. At that time, and during their initial discussion, Shudarek's supervisor informed her that she would lose the bishop's endorsement by leaving her order. He also informed her that it was possible for a lay person to do her job and that she could reapply for the bishop's endorsement as a lay pastoral associate. She chose not to reapply for the lay position.

After Shudarek left her employment, she applied for unemployment compensation benefits. At a hearing, Shudarek testified that the hospital administrator assured her she would not lose her job by leaving her religious order. The hospital's personnel director testified that the hospital administrator did not have the authority to make such assurances because the bishop was the final decision maker for that position. He also stated that the hospital administrator said he had told Shudarek that it was uncertain whether she could retain her job.

Shudarek testified that she did not apply for the lay position because she believed that she had been fired as a religious pastoral associate and would not be rehired as a lay person. A letter from her supervisor to the bishop said Shudarek, by her decision to leave her religious order, lost her "good standing within the Church and within her community." The bishop's return letter confirmed that Shudarek had lost his endorsement to continue as a pastoral associate.[1]

---

[1] The bishop's letter states that Shudarek's change of status affects her endorsement as a pastoral associate. He stated that she did not have his endorsement to continue in this work. The

The Commission determined that the Church was legitimately concerned about Shudarek's continued adherence to its religious doctrine because she was required to perform duties of a religious nature as a pastoral associate. It found that even though some lay personnel were employed as pastoral associates, their authority was not co-extensive with that of religious pastoral associates in regard to performance of religious functions. The Commission concluded that the Church was reasonable in requiring a special endorsement prior to allowing Shudarek to change her status to a lay position.

## STANDARD OF REVIEW

Section 102.23(6),[2] Stats., provides:

If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence.

In *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173–74 (1983), the court said:

The standard to be applied under sec. 102.23(6), Stats., continues to require that deference be accorded the Com-

---

letter is not specific whether the lost endorsement extended to the pastoral associate position. Shudarek had not applied for the lay position at that time.

[2] Section 108.09(7)(b), Stats., states in pertinent part: "Any judicial review under this chapter shall be confined to questions of law, and the provisions of ch. 102 with respect to judicial review of orders and awards shall likewise apply to any decision of the commission reviewed under this section."

mission's findings of fact. A reviewing court may not substitute its own judgment in evaluating the weight or credibility of the evidence. Under the statutory restatement appearing in sec. 102.23 (6), as prior thereto, if there is relevant, credible, and probative evidence upon which reasonable persons could rely to reach a conclusion, the finding must be upheld.

██

On appeal from the decision of an administrative agency, our standard of review is the same as that of the circuit court. *Miller Brewing Co. v. ILHR Department,* 103 Wis. 2d 496, 501, 308 N.W.2d 922, 925 (Ct. App. 1981). Legal conclusions drawn by the Commission from its factual findings are subject to judicial review. *Wehr Steel Co. v. ILHR Dept.,* 106 Wis. 2d 111, 117, 315 N.W.2d 357, 361 (1982). Such questions of law are reviewable *ab initio* by this court and are properly subject to judicial substitution of judgment. *American Motors Corp. v. ILHR Dept.,* 101 Wis. 2d 337, 353–54, 305 N.W.2d 62, 70 (1981). However, the construction of a statute by the administrative agency which must apply the law is entitled to great weight and we will defer to the agency's interpretation if a rational basis exists for its conclusion. *Environmental Decade v. ILHR Dept.,* 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981).

## VOLUNTARY TERMINATION

Shudarek argues that she did not voluntarily terminate her employment by leaving her religious order. She contends that her employer fired her for this decision and that she is eligible for unemployment compensation benefits.

Section 108.04 (7), Stats., states the general rule that an employe who voluntarily terminates his or her employment with an employing unit is ineligible for unemploy-

ment compensation.[3] An exception to this rule exists when the employe voluntarily terminates his or her employment with good cause attributable to the employing unit. Sec. 108.04(7)(b).

The question is whether Shudarek's decision to leave her religious order and failure to reapply for the lay pastoral associate position amounted to a voluntary termination and if so, whether the hospital's conduct constituted "good cause attributable to the employing unit."

■

Voluntary termination is not limited to the employe who quits his or her employment. It can also encompass a situation in which the employer discharges the employe. *Nottelson v. ILHR Department*, 94 Wis. 2d 106, 119, 287 N.W.2d 763, 769 (1980). The test to determine whether a discharge constitutes "voluntary termination" is:

" 'When an employee shows that he [or she] intends to leave his [or her] employment and indicates such intention by word or manner of action, or by conduct, inconsistent with the continuation of the employee-employer relationship, it must be held, . . . that the employee intended and did leave his [or her] employment voluntarily . . . .' " [Citations omitted.]

*Id.* at 119, 287 N.W.2d at 770.

■

The *Nottelson* court also construed the phrase "terminated his [or her] employment with good cause attribut-

---

[3] Section 108.04(7), Stats., states in pertinent part:

(a) If an employee terminates his or her employment with an employing unit, the employe shall be ineligible for any benefits for the week of termination and thereafter until he or she has again been employed within at least 4 weeks and has earned wages of at least $200, except as otherwise provided in this subsection.

. . . .

(b) Paragraph (a) shall not apply if the department determines that the employe terminated his employment with good cause attributable to the employing unit.

able to the employment unit" contained in sec. 108.04 (7) (b), Stats. " 'Good cause attributable to the employing unit' means some act or omission by the employer justifying the employee's quitting; it involves 'some fault' on the part of the employer and must be 'real and substantial.' " *Id.* at 120, 287 N.W.2d at 770.

The Commission determined that the facts established that Shudarek's termination was voluntary and not with good cause attributable to the employing unit. The Commission concluded that Shudarek's position required her to perform duties of a religious nature and that it was reasonable for the Church to require a separate endorsement by the bishop before allowing her to change her status to a lay pastoral associate.

Shudarek was informed that her decision to leave her religious order terminated her endorsement by the bishop. That endorsement was a required prerequisite to employment as a pastoral associate. Shudarek left her religious order even though she knew that by doing so she would lose the necessary endorsement. Her action was inconsistent with the continuation of the employe-employer relationship and was a voluntary termination of her employment.

In addition, she was repeatedly informed that she could reapply for a similar position as a lay pastoral associate and seek a new endorsement by the bishop. She did not reapply for the lay position because she did not believe that she would have received the bishop's endorsement.

By failing to reapply, she refused to take that action which may have allowed her to continue her employment at the hospital even after she left her religious order. This failure to reapply constituted voluntary action which was inconsistent with continuing as an employe. Had she applied and not received the bishop's endorsement, we would

have determined whether the refusal to grant the endorsement constituted good cause attributable to the employing unit justifying her quitting. Since she did not reapply, we need not address this question.

■

Shudarek voluntarily terminated her employment and is ineligible for unemployment compensation benefits. The Commission did not err in concluding that Shudarek voluntarily terminated her employment under sec. 108.04 (7), Stats.

## RELIGIOUS DISCRIMINATION

Shudarek contends that her rights to religious freedom under the first amendment to the United States Constitution and Art. I, sec. 18 of the Wisconsin Constitution were violated because she was forced to choose between living outside the convent or continuing her employment at the hospital. The Commission concluded that it was reasonable for the Church to require the bishop's endorsement since her job entailed performing religious duties and that the Church had a legitimate concern about Shudarek's continued adherence to its religious doctrine after she left her order.

This is not the type of choice between "fidelity to religious belief or cessation of work" prohibited by *Thomas v. Review Board of Indiana Employment Security Division,* 450 U.S. 707, 717 (1981). Shudarek was not forced by her employer to choose between her religious decision and her desire to continue working. She was given the option to apply for the lay pastoral associate position. She chose not to apply for the position, even though her supervisor repeatedly informed her that she could be con-

sidered for the position. In *Thomas,* the Supreme Court noted that Thomas checked all in-plant openings in an effort to transfer into a job which did not require him to perform duties which violated his religious beliefs and tried to obtain a layoff rather than quit. *Id.* at 710.

Shudarek's refusal to seek the lay position distinguishes this case from *Thomas.* She chose not to apply for a position which would have allowed her to continue her employment, while not requiring her to change her religious beliefs in any way. Given her choice not to apply for the lay position, we cannot conclude that the Commission improperly denied her unemployment compensation benefits.

*By the Court.*—Judgment affirmed.