C.W. TRANSPORT, INC., Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION
and Dennis Hodorff, Defendants-Respondents.

Court of Appeals

*No. 84–2047. Submitted on briefs October 11, 1985.—*
*Decided January 24, 1986.*
(Also reported in 383 N.W.2d 921.)

521

For the plaintiff-appellant the cause was submitted on the briefs of *Robert F. Johnson* and *Robert W. Burns* and *Cook & Franke S.C.*, of Milwaukee.

For the defendant-respondent Labor and Industry Review Commission the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Gordon Samuelsen*, assistant attorney general.

For the defendant-respondent Dennis Hodorff the cause was submitted on the brief of *Albert J. Goldberg* and *Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C.*, of Milwaukee.

Before Gartzke, P.J., Dykman, J., and Eich, J.

GARTZKE, P.J. C. W. Transport, Inc., appeals from a judgment affirming the Labor and Industrial Review Commission's decision that Dennis Hodorff was entitled to worker's compensation. The issue is whether LIRC properly concluded that claimant's injury was within the scope of his employment with C. W. when the injury occurred during a "trip-lease" of his tractor-trailer unit to another carrier entered by claimant in his name. We accept LIRC's conclusion and affirm the judgment.

Claimant is the owner-operator of a tractor-trailer. He leased his unit to C. W., which concedes that claimant was its employe when he drove under the lease. C. W. is a special commodities common carrier. LIRC found that C. W. paid claimant seventy-five percent of the revenue on loads he transported. After delivering a load, he would pick up another load for C. W. If a C. W. load was unavailable, he would attempt to "trip-lease" his equipment to another carrier for a single trip. He had to notify C. W. of the trip-lease destination and arrival time and had to obtain C. W.'s approval, which was routinely granted unless C. W. had a load of its own. After a trip-lease load was delivered, the lessee carrier paid C. W., which deducted seven percent for administrative costs and forwarded the balance to claimant.

LIRC found that February 15, 1982 claimant, after delivering a C. W. load in Virginia and attempting to obtain a load for C. W., trip-leased to National Trailer Convoy, Inc., to transport a load to Indiana. Two days later he was injured while removing the tarp from his truck at the Indiana destination.

LIRC found that claimant was in Virginia only because of his employment with C. W. Transport, and but

for that employment, would not have been in a position to trip-lease. Because C. W. had to approve the trip-lease, required claimant to apprise it of his schedule, and retained seven percent of the trip-lease payment, LIRC found that C. W. reserved a modicum of direction and control during the trip-lease. LIRC concluded that claimant's injury arose out of his C. W. employment, while performing services growing out of and incidental to the employment.

C. W. Transport contends that the evidence does not support LIRC's findings as to direction and control. In C. W.'s view, National Trailer was the employer during the trip-lease because claimant individually trip-leased to National Trailer. C. W. contends that it did not require the claimant to trip-lease, played no role in obtaining the lease, had no contact with National Trailer before or during the lease, and did not know of the lease until after claimant entered it. It attacks the finding that "but for" his C. W. employment claimant would not have been in a position to trip-lease, and contends that "but for" the independently-obtained trip-lease claimant would not have been injured.

Alternatively, C. W. argues that it loaned claimant to National Trailer for the trip during which he was injured and that National Trailer is therefore liable for his worker's compensation benefits. LIRC did not address this contention.

### Scope of Employment

An employer is liable for worker's compensation when the employe is performing services growing out of and incidental to his or her employment and the ac-

cident causing injury arises out of the employment. *Nigbor v. DILHR,* 120 Wis. 2d 375, 383, 355 N.W.2d 532, 537 (1984); secs. 102.03(1)(c)1 and (e), Stats. Whether those conditions for liability exist is a question of law, once the facts relating to the employe's conduct have been established. *Nigbor,* 120 Wis. 2d at 383–84, 355 N.W.2d at 537. We will sustain LIRC's reasonable conclusions of law based on the established facts even if LIRC could have reached a different but equally reasonable conclusion. *Id.* We must accept LIRC's findings of fact unless they are unsupported by credible and substantial evidence. *Wisconsin Cheese Service, Inc. v. DILHR,* 115 Wis. 2d 573, 576, 340 N.W.2d 908, 909 (Ct.App. 1983); sec. 102.23(6).

Our scope of review is the same as the trial court's, both as to the facts and the law, and we reach our decision without deference to that court's decision. *Shudarek v. Labor & Industry Rev. Comm.,* 114 Wis. 2d 181, 186, 336 N.W.2d 702, 705 (Ct.App. 1983); *Stafford Trucking, Inc. v. ILHR Dept.,* 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct.App. 1981).

The record supports LIRC's finding that C. W. reserved control during the trip-lease. The reservation is a reasonable factual inference from the undisputed facts that a driver must inform C. W. that a trip lease movement is available and must disclose the trip-lease destination and time of arrival, and that C. W. reserves the right to disapprove the trip lease.

LIRC properly rejected C. W.'s contention that because of the trip-lease claimant left its employment. Claimant's lease with C. W. contains no provision for suspension of employment or of the lease itself during a trip-lease to another carrier. The C. W. lease gives

C. W. complete possession and control of claimant's equipment and expressly precludes claimant from operating his equipment for anyone other than C. W.

That the trip-lease with National Trailer is in claimant's name rather than C. W.'s is immaterial. C. W.'s witness admitted that federal regulations require that a carrier in C. W.'s position be the named lessor in a trip-lease by one of its drivers.[1] The record contains three trip-leases between C. W. and other carriers signed by claimant on behalf of C. W., as the named lessor. Claimant explained why he named himself as lessor on the lease at issue rather than C. W. He testified that he had lost his C. W. "permits," and National

---

[1] 49 CFR sec. 1057.22 provides:

Regardless of the leasing regulations set forth in this part, an authorized carrier may lease equipment to or from another authorized carrier, or a private carrier may lease equipment to an authorized carrier under the following conditions:

(a) The identification of equipment requirements in § 1057.11(c) must be complied with;

(b) The lessor must own the equipment or hold it under a lease of 30 days or more;

(c) There must be a written agreement between the authorized carriers or between the private carrier and authorized carrier, as the case may be, concerning the equipment as follows:

(1) It must be signed by the parties or their authorized representatives.

(2) It must provide that control and responsibility for the operation of the equipment shall be that of the lessee, from the time possession is taken by the lessee and the receipt required under § 1057.11(b) is given to the lessor until: (i) Possession of the equipment is returned to the lessor and the receipt required under § 1057.11(b) is received by the authorized carrier; or (ii) in the event that the agreement is between authorized carriers, possession of the equipment is returned to the lessor or given to another authorized carrier in an interchange of equipment.

(3) A copy of the agreement must be carried in the equipment while it is in the possession of the lessee.

Trailer insisted that it have the permits before entering a lease with C. W. The C. W. witness admitted that claimant told him he had lost his permits and the witness arranged to forward duplicates.

Under the National Trailer trip-lease, the lessor agreed to provide worker's compensation insurance covering the driver. Similar language is in two of the other trip-leases involving C. W. and claimant. This provision further supports LIRC's conclusion that claimant remained C. W.'s employe during the trip-lease to National Trailer.

■

Contrary to C. W.'s claims, claimant's trip-leasing is not independent of his C. W. employment. LIRC reasonably concluded on the established facts that claimant's injury arose out of his C. W. employment, while he performed services growing out of and incidental to his employment.

## *Loaned Employe*

■

Under a loaned employe analysis, C. W. would be claimant's general employer and National Trailer would be his special employer. A special employer is liable for worker's compensation if the employe has consented to work for the special employer, the employe performs work for the special employer primarily for its benefit, and the special employer has the right to control the details of the work. *Seaman Body Corporation v. Industrial Comm.,* 204 Wis. 157, 163, 235 N.W. 433, 435–436 (1931).

Some jurisdictions have held the trip-lease lessee, such as National Trailer, responsible for worker's com-

pensation benefits using a loaned employe analysis. *Rainbow Poultry Co. v. Ritter Rental System, Inc.,* 140 So.2d 101 (Fla. 1962); *Farmer v. Ryder Truck Lines, Inc.,* 266 S.E.2d 922 (Ga.), *cert. denied,* 449 U.S. 885 (1980); *M.W.M. Trucking Co. v. Industrial Commission,* 342 N.E.2d 17 (Ill. 1976); *Eaddy v. A.J. Metler Hauling & Rigging Co.,* 325 S.E.2d 581 (Ct.App. S.C. 1985). Other courts have held the lessor, such as C. W., responsible. *Julian Martin, Inc. v. Indiana Refrigeration Lines,* 560 S.W.2d 228 (Ark. 1978); *Gibson v. Moore Motor Freight Lines,* 75 N.W.2d 212 (Minn. 1956); *Bradshaw v. Richardson Trucks, Inc.,* 467 S.W.2d 945 (Mo. 1971); *Argonaut Ins. Co. v. Vanatta,* 539 S.W.2d 35 (Tenn. 1976). In *Transport Motor Express, Inc. v. Smith,* 311 N.E.2d 424 (Ind. 1974), the court concluded that the carriers are the drivers' joint employers and are both liable.

The variations among those cases, and the similarities and dissimilarities between those cases and this case, do not concern us. Applying Wisconsin law, we conclude LIRC had no reason to decide whether claimant was a loaned employe. Claimant's status as a loaned employe would not relieve C. W. of liability. Although the special employer is ultimately responsible for compensation, a loaned employe may claim worker's compensation from either the general employer or the special employer. *Meka v. Falk Corp.,* 102 Wis. 2d 148, 149–50 n.4, 306 N.W.2d 65, 67 (1981) (quoting *Braun v. Jewett,* 1 Wis. 2d 531, 535–36, 85 N.W.2d 364, 367 [1957]); sec. 102.06, Stats. Claimant seeks compensation from C. W., his general employer, and is entitled to do so, whether or not National Trailer was his special employer. C. W.'s rights, if any, against National Trailer are not at issue in this proceeding.

C. W. nevertheless argues that claimant's loaned employe status would relieve C. W. of liability under sec. 102.06, Stats., as interpreted in *Green Bay Packaging, Inc. v. ILHR Dept.,* 72 Wis. 2d 26, 240 N.W.2d 422 (1976). Section 102.06 provides in relevant part:

An employer shall be liable for compensation to an employe of a contractor or subcontractor under the employer who is not subject to this chapter, or who has not complied with the conditions of s. 102.28(2) in any case where such employer would have been liable for compensation if such employe had been working directly for the employer. ... In the same manner, under the same conditions, and with like right of recovery, as in the case of an employe of a contractor or subcontractor, described above, an employer shall also be liable for compensation to an employe who has been loaned by the employer to another employer.

The *Green Bay Packaging* court held that "contractor under" refers to a person who regularly furnishes an employer materials or services that are integrally related to the finished product or service provided by the employer. 72 Wis. 2d at 36, 240 N.W.2d at 428. C. W. argues that this interpretation applies to a loaned employe relation, and because no evidence exists that National Trailer regularly furnishes C. W. services integrally related to the service provided by C. W., it is not liable under the statute. We reject this contention.

The *Green Bay Packaging* court recognized that sec. 102.06, Stats., is not intended to impose liability on employers for the employes of all persons with whom they have contractual relations. The "integrally-related" test determines when a nonemploye should be

treated as an employee of a person who uses contractors or subcontractors. A loaned employe is already a general employer's employe. Consequently, the *Green Bay Packaging* test is irrelevant to the loaned employe relationship.

We therefore affirm the judgment which in turn affirmed LIRC's decision.

*By the Court.*—Judgment affirmed.